**UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO**

---------------------------------------------------------x

In re                                                                      :   Chapter 11
                                                                                 :
HOSPITAL DAMAS, INC.                                           :   Case No. 10-08844
                                                                                 :
                    Debtor.                                              :
                                                                                 :

---------------------------------------------------------x

### URGENT JOINT MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO OBTAIN POSTPETITION SENIOR SECURED FINANCING, USE CASH COLLATERAL, AND PROVIDE ADEQUATE PROTECTION

COME NOW Hospital de Damas, Inc. ("Debtor"), as debtor and debtor in possession in the above-captioned chapter 11 case, and Banco Popular de Puerto Rico ("Banco Popular"), as the owner, as of April 30, 2010, of all credit relationships among Debtor and its affiliate and Westernbank Puerto Rico ("Westernbank")[1], each by their respective undersigned counsel, and respectfully submit this Urgent Joint Motion for Entry of an Order Authorizing Debtor to Obtain PostPetition Senior Secured Financing, Use Cash Collateral, and Provide Adequate Protection (the "Motion").

### Fed. R. Bankr. P. 4001 Concise Statement[2]

1. By the Motion and for the reasons set forth below, pursuant to sections 105, 361, 362, 363, 364, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Fed. R. Bankr. P. 2002, 4001, and 9014, Debtor and Banco Popular respectfully request the entry of an order substantially in the form attached hereto as **Exhibit A** (the "DIP Order") authorizing Debtor to (A) obtain post-petition senior secured financing, (B) use cash collateral, and (C) Grant Limited

---

[1] References to Banco Popular prior to April 30, 2010 shall include and refer to Westernbank.

[2] Unless otherwise indicated, capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the DIP Term Sheet (as defined below).

Priming Liens and Superpriority Claims to the Postpetition Lender, and (D) Provide Adequate Protection to the Prepetition Lender.

2.  Debtor respectfully requests that the DIP Facility (as defined below) be approved pursuant to the terms of the Summary of Principal Terms and Conditions, dated September __, 2010, attached to the DIP Order as **Exhibit 1** (the "DIP Term Sheet") and the DIP Order.[3]

3.  Pursuant to Fed. R. Bankr. P. 4001 and Local Bankr. R. 4001-2, the following are the material provisions of the DIP Term Sheet and/or the DIP Order:[4]

| | |
|---|---|
| **Borrower** *Fed. R. Bankr. P. 4001(c)(1)(B)* | Debtor. |
| **Postpetition Lender** *Fed. R. Bankr. P. 4001(c)(1)(B)* | Banco Popular (in its capacity as lender under the DIP Facility (as defined below), the "Postpetition Lender") |
| *Local***Commitment** *Fed. R. Bankr. P. 4001(c)(1)(B)* *P.R. Bankr. L.R. 4001-2(a)(1)* | $1,008,547.54 (the "DIP Facility") to be made available to Debtor until the Maturity Date and which DIP Facility shall be available to Debtor in accordance with and be governed by the terms of the DIP Term Sheet and the other DIP Documents. (DIP Term Sheet § 5) |
| **Term** *Fed. R. Bankr. P. 4001(c)(1)(B)* | Unless accelerated by an Event of Default (as defined below), the earliest to occur (the "Maturity Date") of: (a) consummation of any consensual or nonconsensual (including under section 1129(b)(2)(A)(i), (ii) and/or (iii) of the Bankruptcy Code) chapter 11 plan of reorganization or liquidation of or for Debtor, whether proposed by Debtor or any other party, and (b) one hundred and eighty days (180) |

---

[3]  In the interest of time, Banco Popular has agreed to provide interim post-petition financing to Debtor solely on the basis of the DIP Term Sheet and the DIP Order. Prior to the hearing on the same, Debtor and Banco Popular shall agree on the form of the final documentation of the Amendment (as defined in the DIP Term Sheet, and together with the DIP Term Sheet, the Note (as defined in the DIP Term Sheet), and any other documents related to the DIP Facility (as defined below), the "DIP Documents") evidencing the DIP Facility consistent with the DIP Term Sheet. Debtor will provide a copy of the form of the final documentation of the Amendment to the Court, the U.S. Trustee, and all parties in interest upon appropriate notice in advance of the hearing. For the avoidance of doubt, failure by Debtor and Banco Popular to execute the Amendment shall not release Debtor from any of their obligations under the DIP Term Sheet, the Note or the DIP Order.

[4]  The summaries and descriptions of the terms and conditions of the DIP Term Sheet and the DIP Order set forth in this motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the DIP Term Sheet and the DIP Order. In the event that there is a conflict between this motion and the DIP Term Sheet or the DIP Order, the DIP Term Sheet or the DIP Order, as applicable, shall control in all respects.

| | |
|---|---|
| | days after the Petition Date. The Maturity Date shall be accelerated upon the occurrence of an Event of Default, subject to the Remedies Notice Period. (DIP Term Sheet § 11). |
| **Use of DIP Facility**<br>*Fed. R. Bankr. P.*<br>*4001(c)(1)(B)*<br>*Local Bankr. R.*<br>*4001-2(a)(2), (3), (7)* | Subject to the DIP Budget (as defined below), the DIP Facility and Cash Collateral shall be used to fund: (a) the consummation of a plan of reorganization (subject to certain conditions as set forth in the DIP Term Sheet), (b) Banco Popular's monthly interest, principal, out-of-pocket costs, fees, and expenses related to the DIP Facility, (c) employee wages and general corporate purposes, (d) payment of operational expenses during the Bankruptcy Case as set forth in the DIP Term Sheet, (e) Adequate Protection Payments (as defined below), and (f) the Carve-Out (as defined in the DIP Term sheet) for payment of quarterly fees to the U.S. Trustee and unpaid and allowed fees and expenses of Debtor's professionals during the bankruptcy case. (DIP Term Sheet § 12) |
| **Entities with Interests in Cash Collateral**<br>*Fed. R. Bankr. P.*<br>*4001(b)(1)(B)(i)* | Banco Popular |
| **Use of Cash Collateral; Material Terms**<br>*Fed. R. Bankr. P.*<br>*4001(b)(1)(B)(ii) and (iii)*<br>*Local Bankr. R.*<br>*4001-2(a)(2), (3), (7)* | Debtor is authorized to use Cash Collateral (as defined below) of the Prepetition Lender (as defined below) subject to the provisions for adequate protection detailed in the DIP Term Sheet and summarized below. Debtor's right to use Cash Collateral shall terminate automatically on the Maturity Date or upon the occurrence of an Event of Default. (DIP Term Sheet § 19) |

| | |
|---|---|
| **Interest Rates**<br>*Fed. R. Bankr. P.*<br>*4001(c)(1)(B)* | Outstanding amounts under the DIP Facility shall accrue interest at per annum rate of 0.25% over the Base Rate (the "<u>Non-Default Rate</u>"). Accrued interest shall be payable monthly in arrears not later than the first day of each calendar month and shall be calculated on the basis of a 360-day year and actual days elapsed. Default interest shall be equal to five basis points over the Base Rate per annum, shall automatically accrue on and after occurrence and during the continuance of an Event of Default under the DIP Term Sheet and shall be payable on demand. (DIP Term Sheet § 8). |
| **Budget**<br>*Fed. R. Bankr. P.*<br>*4001(c)(1)(B)*<br>*Local Bankr. R.*<br>*4001-2(a)(2), (3), (7)* | A six month budget (divided by month) in form and substance satisfactory and agreeable to Banco Popular. (DIP Term Sheet § 12) |
| **Milestones**<br>*Fed. R. Bankr. P.* | Debtor shall file and receive Court approval of a plan of reorganization for Debtor that is satisfactory and agreeable to |

| | |
|---|---|
| *4001(c)(1)(B)(vi)* | Banco Popular and the Disclosure Statement (as defined below) in accordance with the milestones set forth in the DIP Term Sheet. (DIP Term Sheet § 21) |
| **Other Covenants** | Compliance with affirmative and negative covenants as are customary for debtor in possession financing, including delivery of bi-weekly cash reports, and limitation on liens, indebtedness, investments, sales, and affiliate transactions. (DIP Term Sheet § 25, 26) |
| **Liens and Priorities** *Fed. R. Bankr. P. 4001(c)(1)(B)(i) Local Bankr. R. 4001-2(a)(6)* | The DIP Facility shall be afforded certain liens and claims, including priming liens and superpriority claims on property of the estate. (DIP Term Sheet § 17) (DIP Order ¶¶ 7 and 8) |
| **Carve-Out** | Subject to the terms and conditions set forth in § 20 of the DIP Term Sheet, an amount not to exceed $350,000.00 to satisfy (collectively, the "Carve-Out") all fees required to be paid pursuant to 28 U.S.C. §§ 156(c) and 1930(a)(6) and the unpaid and allowed fees and expenses of the Debtor's professionals during the bankruptcy case. (DIP Term Sheet § 20) |
| **Waiver of Rights** *Fed. R. Bankr. P. 4001(c)(1)(B)(viii) and (x) Local Bankr. R. 4001-2(a)(6)* | Debtor waives certain rights and causes of actions against Banco Popular, including waiving any and all claims under section 506(c) of the Bankruptcy Code, and such waivers and stipulations are binding on all parties in interest. (DIP Term Sheet § 19) (DIP Order, ¶ 14) |
| **Determination of Validity, Enforceability, Priority, or Amount of a Prepetition Claim or Any Lien Securing the Claim** *Fed. R. Bankr. P. 4001(c)(1)(B)(iii) Local Bankr. R. 4001-2(a)(6)* | Debtor stipulates to the enforceability of the obligations under the Prepetition Loan Documents (as defined below) and the validity of the Prepetition Loan Agreement Liens (as defined below). The obligations under the Prepetition Loan Documents shall constitute allowed, secured claims for all purposes in the case and any subsequent proceedings under the Bankruptcy Code, and the Prepetition Loan Agreement Liens shall be deemed legal, valid, and binding. (DIP Term Sheet § 19) (DIP Order, ¶ 14) |
| **Adequate Protection for Prepetition Lender** *Fed. R. Bankr. P. 4001(b)(1)(B)(iv), 4001(c)(1)(B)(ii), Local Bankr. R. 4001-2(a)(6)* | Adequate protection for the Prepetition Lender (as defined below) includes additional and replacement liens, superpriority claims, waiver of section 506(c) claims, adequate protection payments, repayment from unencumbered assets, payment of all reasonable professional fees and expenses incurred by the Prepetition Lender in connection with the administration of the chapter 11 case, the right to credit bid, payment of insurance proceeds, loss payee and additional insured status on Debtor's insurance policies, reporting and inspection rights, certain setoff/recoupment rights as to any securities collateral, and certain other protections. (DIP Term Sheet § 19) |
| **Events of Default** *Fed. R. Bankr. P.* | The DIP Term Sheet contains certain Events of Default, as detailed in the DIP Term Sheet. (DIP Term Sheet § 22, |

| | |
|---|---|
| 4001(c)(1)(B) | Exhibit A) |
| **Waiver or Modification of the Automatic Stay** *Fed. R. Bankr. P. 4001(c)(1)(B)(iv)* | Subject to ten (10) business days' prior written notice of an Event of Default by Banco Popular to Debtor, the automatic stay shall be terminated (solely with respect to the DIP Facility and the Recoupment) to permit the exercise of remedies by Banco Popular, with a full waiver by Debtor of all rights to contest such termination except with respect to the existence and/or continuance of an Event of Default. (DIP Term Sheet Exhibit B, ¶ 1) |
| **Waiver or Modification of Applicability of Nonbankruptcy Law Relating to the Perfection or Enforceability of a Lien** *Fed. R. Bankr. P. 4001(c)(1)(B)(vii)* | All liens granted under the DIP Order for the benefit of Banco Popular, other than liens on Avoidance Actions (as defined below), shall be enforceable, non-avoidable, and automatically perfected, effective as of the date of entry of the DIP Order, and no further action shall be required to effect such perfection. (DIP Order ¶14 ) |
| **Indemnification** *Fed. R. Bankr. P. 4001(c)(1)(B)(ix)* | Debtor agrees to certain indemnities as described in the DIP Term Sheet § 30. |
| **Conditions to Borrowing** *Fed. R. Bankr. P. 4001(c)(1)(B)* | Customary borrowing conditions, including: (a) delivery of a Borrowing Request, (b) accuracy of all representations and warranties contained in the DIP Documents, (c) absence of any continuing Event of Default or any event or condition which, with notice or the passage of time or both, would constitute an Event of Default, (d) entry of the DIP Order, (e) payment of Banco Popular's due and payable fees and expenses, and (f) financing-related motions being in form and substance satisfactory and agreeable. (DIP Term Sheet § 23) |
| **Liens on Causes of Action Under Chapter 5 and Proceeds Thereof** *Fed. R. Bankr. P. 4001(c)(1)(B)(xi)* | Banco Popular shall be granted liens on all Avoidance Actions (as defined below). (DIP Term Sheet § 17) ( DIP Order ¶ 7) |

## **Jurisdiction**

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

**A. The Bankruptcy Filing:**

5. On the date hereof (the "<u>Petition Date</u>"), Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor is authorized to continue to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. Debtor operates a medical hospital located in Ponce, Puerto Rico.

7. The bankruptcy filing is primarily aimed at restructuring Debtor's obligations and operations, for which it is essential and critical that the terms of this Motion be approved to allow Debtor to maintain the viability of its business as a going concern.

8. Additional information regarding Debtor's business and capital structure, as well as the circumstances leading to this chapter 11 case, is contained in the Declaration of Julio Colón Rivera in Support of Debtor's Chapter 11 Petition and First Day Pleadings, sworn to on September __, 2010 (the "<u>Declaration</u>").

**B. The Loan Documents:**

**i. Financing Agreements executed with Banco Popular:**

9. Debtor and Banco Popular**,** among other parties, entered into, among others, the following loan agreements: (i) Loan Agreement dated October 31, 2003; (ii) Amendment to Loan Agreement (*"Enmienda a Contrato de Préstamo"*) executed on March 15, 2004; ofand (iii) Financing Agreement dated December 28, 2007 (the "Banco Popular Financing Agreements").

10. Pursuant to the Banco Popular Financing Agreements, Banco Popular provided to Debtor certain term credit facilities.

11. To secure the payment and performance of all their obligations under the Banco Popular Financing Agreements, 'sDebtor related entity, Fundación de Damas, Inc. ("FDI"), granted

Banco Popular a first priority perfected security interest over certain real estate and securities (collectively, the "Banco Popular Collateral").[5]

12. As inducement for, and in consideration of, Banco Popular making loans and advances and providing other financial accommodations to Debtor under the Banco Popular Financing Agreements (and, to secure and satisfy the obligations under the Banco Popular Financing Agreements), Debtor and FDI executed the following additional documents (each as may have been subsequently amended or modified): (i) Promissory Note executed on December 26, 2003 by FDI in the principal amount of $2,200,000.00; (ii) Mortgage Note executed on October 31, 2003 by FDI; (iii) Pledge Agreement executed on October 31, 2003 by FDI; (iv) Financing Statement executed by FDI on October 31, 2003; (v) Commitment Letter dated December 26, 2007; (vi) Term Note executed on December 28, 2007 by Debtor in the principal amount of $3,500,000, with a maturity date of January 1, 2013 ; (vii) Mortgage Note executed on December 28, 2007 by FDI; (iv) Pledge Agreement executed on December 28, 2007 by FDI; (viii) Securities Pledge Agreement executed on December 28, 2007 by FDI; (ix) Pledge, Assignment and Security Agreement executed on December 28, 2007 by FDI; (x) Account Control Agreement executed on December 28, 2007 by FDI; (xi) Continuing and Unlimited Guaranty by FDI; (xii) Financing Statement executed by Debtor and FDI on December 28, 2007; and (xiii) any other agreements, financing statements, documents and instruments at any time executed and/or delivered in

---

[5] The Banco Popular Collateral includes, among other things, (each capitalized term herein shall have the same meaning ascribed to such term under the Banco Popular Financing Agreements): (a) Mortgage Note executed on October 31, 2003 by FDI to the order of Banco Popular in the principal amount of $2,200,000.00 under affidavit no. 2,676 of Notary Public Alys Margarita Collazo Bougeois, secured by Deed No. 416 executed on October 31, 2003 before the same Notary Public constituting a mortgage on property no. 61,735; (b) Mortgage Note executed on December 28, 2007 by FDI to the order of Banco Popular in the principal amount of $3,500,000.00 under affidavit no. 5,710A of Notary Public Alys Margarita Collazo Bougeois, secured by Deed No. 630 executed on December 28, 2007, before the same Notary Public constituting a mortgage on property no. 61,277; and (c) securities, security entitlements, securities accounts and other investment property of FDI held in account number PSL-409871 with Popular Securities.

.

connection with the foregoing documents or related thereto (collectively with the Banco Popular Financing Agreements, the "Banco Popular Loan Documents").

13. Under the Banco Popular Financing Agreements, Debtor has, as of the Petition Date, incurred obligations to Banco Popular that amount to at least $4,773,600.22.

**ii. Financing Agreements executed with Westernbank Puerto Rico:**

14. Debtor and Westernbank, among other parties, entered into, among others, the following loan agreements: (i) Loan Agreement dated December 1, 2002; (ii) Loan Agreement dated January 1, 2005; (iii) Loan Agreement dated May 13, 2005; (iv) "Contrato de Línea de Crédito con Conversión a Préstamo Permanente" dated September 1, 2005; (v) Term Loans and Line of Credit Agreement dated December 18, 2006; and (vi) Term Loan Agreement dated December 14, 2007 (collectively referred to as the "Westernbank Financing Agreements") (the Westernbank Financing Agreements and the Banco Popular Financing Agreements, collectively, the "Pre-Petition Financing Agreements").

15. Pursuant to the Westernbank Financing Agreements, Westernbank provided to Debtor certain credit facilities.

16. To secure the payment and performance of all their obligations under the Westernbank Financing Agreements, Debtor granted to Westernbank a first priority perfected security interest over all or nearly all (except for the Banco Popular Collateral) of its assets (collectively, the "Westernbank Collateral")[6] (the Westernbank Collateral and the Banco Popular Collateral, collectively, the "Collateral").

---

[6] The Westernbank Collateral includes, among other things, (each capitalized term herein shall have the same meaning ascribed to such term under the Financing Agreements): (a) Mortgage Note payable to Puerto Rico Industrial, Higher Education and Environmental Pollution Control Facilities Financing Authority("AFICA") in the prinicipal sum of $16,000,000.00 executed on May 16, 1986, authenticated as per affidavit number 10,572 before Notary Public Carlos Santos Correa secured by Deed No. 1 of even date and before the same Notary Public; (b) Mortgage Note executed on September 24, 1991 by FDI to the order of AFICA executed on September 24, 1911, in the principal amount of $2,100,000.00 under affidavit no. 1,526 of Notary Public Francisco J. García García, secured by Deed No. 1 of even

date and before the same Notary Public constituting a mortgage over property 9,254; (c) Mortgage Note payable to the Bearer in the principal sum of $6,300,000.00 executed on November 1st, 1996, authenticated as per affidavit number 79 before Notary Public Eduardo J. Arias Rodríguez secured by Deed No. 10 of even date and before the same Notary Public; (d) Mortgage Note payable to the Bearer in the principal amount of $1,930,000.00 executed on March 31, 1998 under affidavit 945 before Notary Public Antonio J. Santos Prats, secured by Deed No. 6 of even date before the same Notary Public, constituting a mortgage over property no. 26,777; (e) Mortgage Note payable to Westernbank Puerto Rico in the principal sum of $1,635,000.00 executed on August 16, 2001, authenticated under affidavit number 3,896 before Notary Public Lourdes Alicea Soto, secured by Deed No. 153 of even date and before the same Notary Public, constituting a mortgage over property no. 61,060; (f) Mortgage Note payable to Westernbank Puerto Rico in the principal sum of $1,365,000.00 executed on August 16, 2001, under affidavit number 3,987 before Notary Public Lourdes Alicea Soto as per deed number 154 of even date and before the same Notary Public, constituting a mortgage over property no. 61,060; (g) Mortgage Note payable to Westernbank Puerto Rico in the principal sum of $183,575.00, executed on November 4, 2002, authenticated as per affidavit number 5,034 before Notary Public Lourdes Alicea Soto secured by Deed No. 392 of even date and before the same Notary Public, constituting a mortgage over property no. 24, 069; (h) Mortgage Note payable to Westernbank Puerto Rico in the principal sum of $216,108.00 executed on November 4, 2002, under affidavit number 5,036 before Notary Public Lourdes Alicea Soto secured by Deed No. 394 of even date and before the same Notary Public, constituting mortgage over property no. 24,071; (i) Mortgage Note payable to Westernbank Puerto Rico in the principal sum of $197,230.00 executed on September 9, 2003, under affidavit number 1,164 before Notary Public Héctor E. Ramírez Carbó secured by Deed No. 27 of even date and before the same Notary Public, constituting a mortgage over property no. 24,772; (j) Mortgage Note payable to Westernbank Puerto Rico in the principal sum of $224,000.00 executed on May 13, 2005, before Notary Public Lourdes Alicea Soto secured by Deed No. 194 of even date and before the same Notary Public, constituting a mortgage over property no. 24,437; (k) Mortgage Note Pledge Agreement executed by FDI in favor of Lender under affidavit no. 362 of Notary Public Vanessa L. Bello Martínez, whereby mortgage notes in the principal amounts of $16,000,000, $2,100,000, $6,300,000, $1,635,000, $1,365,000, $197,230, $183,575, and $216,108 were pledged to Lender to secure all current and future obligations of FDI and HDI; (l) Mortgage Note Pledge Agreement executed on May 13, 2005 by FDI, under affidavit no. 7,325 of Notary Public Lourdes Alicea Soto, whereby mortgage notes in the principal amounts of $16,000,000, $2,100,000, $6,300,000, $1,930,000, $1,635,000, $1,365,000, $183,575, $216,108, $197,230 and $224,000 were pledged to secure all current and future obligations of FDI; (m) Mortgage Note Pledge Agreement executed on December 30, 2003 by FDI under affidavit no. 424 of Notary Public Carlos Joaquín Suárez Maldonado, whereby mortgage note in the principal amount of $102,450 was pledged; (n) Mortgage Note Pledge Agreement executed on September 9, 2003 by FDI under affidavit no. 1,165 before Notary Public Héctor E. Ramírez Carbo, whereby mortgage note in the principal amount of $197,230 was pledged to secure all current and future obligations of FDI; (o) Mortgage Note Pledge Agreement executed on November 4, 2002 under affidavit no. 5,037 before Notary Public Lourdes Alicea Soto, whereby mortgage notes in the principal amounts of $183,575, $168,902, and $216,108 were pledged to secure all current and future obligations of FDI; (p) Mortgage Note Pledge Agreement executed on August 16, 2001 by FDI under affidavit no. 3,898 of Notary Public Lourdes Alicea Soto, whereby mortgage notes in the principal amounts of $1,635,000 and $1,365,000 were pledged to secure all current and future obligations of FDI; (q) Mortgage Note Pledge Agreement executed on August 3, 2001under affidavit no. 3,861 of Notary Public Lourdes Alicea Soto; (r) Mortgage Note Pledge Agreement executed on March 10, 2000 by FDI, under affidavit no. 345 of Notary Public Héctor E. Ramírez Carbo, whereby mortgage note in the principal amount of $16,000,000 was pledged; (s) Security Agreement executed on December 14, 2007 by HDI and FDI under affidavit no. 11,032 of Notary Public Gary E. Biaggi Silva, whereby HDI and FDI pledged a security interest in and to the mortgage notes in the principal amounts of $244,000, $16,000,000, $2,100,000, $6,300,000, $1,930,000, $1,635,000, $1,365,000, $197,230, $183,575 and $216,108, equipment and all other property of HDI and FDI in the possession or control of Lender; (t) Security Agreement executed on October 8, 2008 by HDI and FDI under affidavit no. 18,112 of Notary Public Adrian Hilera Torres; (u) Security Agreement executed on October 3, 2008 by HDI and FDI under affidavit no. 9,797 of Notary Public Gary E. Biaggi Silva, whereby HDI and FDI pledged and granted to the Lender certain mortgage notes, all accounts and accounts receivables of HDI, all inventory of HDI, all equipment of HDI and all other property of HDI and FDI in the possession or control of Lender and all other property of HDI and FDI; and (v) all proceeds of the foregoing Collateral, including whatever is receivable or received when Collateral or proceeds is sold, collected, exchanged, or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes, without limitation, all rights to payment, emerging from or related to any of the Collateral; or emerging from or related to the operation of Debtor's or any of Guarantor's radio stations, including return premiums, and/or insurance benefits with respect to any insurance related thereto.

17. As inducement for, and in consideration of Westernbank making loans and advances and providing other financial accommodations to Debtor under the Westernbank Financing Agreements (and, to secure and satisfy the obligations under the Westernbank Financing Agreements), Debtor (among others) executed the following additional documents (each as may have been subsequently amended or modified): (i) certain promissory notes; (ii) corporate guarantees; (iii) pledge agreements; (iv) security agreements; (v) certain mortgage notes; (vi) certain deeds of mortgages; (vii) certain term and demand notes; (viii) cross default agreement; (ix) cross corporate guarantees; (x) master mortgage notes; (xi) assignment of accounts receivables; and (xii) any other agreements, financing statements, documents and instruments at any time executed and/or delivered in connection with the foregoing documents or related thereto (collectively with the Westernbank Financing Agreements, the "Westernbank Loan Documents") (the Westernbank Loan Documents and the Banco Popular Loan Documents, collectively, the "Pre-Petition Loan Documents").

18. Under the Westernbank Financing Agreements, Debtor has, as of the Petition Date, incurred obligations to Banco Popular that amount to at least $21,393,526.40.

19. Accordingly, under the Pre-Petition Financing Agreements, Debtor has, as of the Petition Date, incurred obligations to Banco Popular that amount to at least $26,167,126.62 (collectively, the "Loans").

**Relief Requested**

20. By this motion and for the reasons set forth below, pursuant to sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Fed. R. Bankr. P. 2002, 4001, and 9014, and Local Bankr. R. 4001-2, Debtor respectfully requests that the Court enter the DIP Order authorizing Debtor to (A) obtain post-petition senior secured financing, (B) use cash collateral, and (C) grant

priming liens and superpriority claims to the Postpetition Lender, (D) provide adequate protection to the Prepetition Lender, and (E) grant related relief, in each case, on the terms and subject to the conditions described herein and set forth in the DIP Order, the DIP Term Sheet and the other DIP Documents.

## Debtor's Proposed DIP Facility

A. **Debtor's Efforts to Obtain Post-petition Financing**

21. In the months leading up to the Petition Date, Debtor faced liquidity problems. Cash generated from Debtor's operations was insufficient to satisfy Debtor's immediate and anticipated cash requirements and Debtor faced substantial pressure from collection efforts by unsecured and contingent/litigation claimants. Accordingly, in anticipation of the commencement of the chapter 11 case, Debtor determined to seek post-petition financing, as Debtor lacked the liquidity necessary to fund its operating expenses.

22. Based on Banco Popular's lien position and history with Debtor, Debtor identified Banco Popular as the most likely source of post-petition financing. Thus, Debtor and Banco Popular engaged in extensive, good faith, arm's length negotiations with respect to the terms and conditions of the post-petition financing. The result of these negotiations is the proposed DIP Facility.

23. Debtor does not believe that it would have been able to obtain post-petition financing from a source other than Banco Popular on terms more favorable than those set forth herein. Banco Popular will not consent to the priming of its liens other than pursuant to the proposed DIP Facility. Because Debtor's obligations to Banco Popular are secured by substantially all, if not all, of Debtor's assets, Debtor had only two potential options with respect to the prospect of obtaining post-petition financing from a lender other than Banco Popular: (a) find a lender willing to extend

post-petition financing with priority junior to that of Banco Popular, or (b) obtain post-petition financing that primed the liens of Banco Popular without its consent.

24. Accordingly, Debtor believes than any effort to attract third party post-petition financing would have caused insurmountable difficulties with Banco Popular, a party whose support is essential to maximizing the value of Debtor's estate, and ultimately, the success of the chapter 11 cases. In light of these concerns and the realities of existing market conditions, Debtor, in the sound exercise of its business judgment concluded that the DIP Facility proposed by Banco Popular is the best post-petition financing option available to Debtor.

**B.     Debtor's Liquidity Needs**

25. Debtor has analyzed the amount of cash necessary to fund Debtor's operations and preserve the value of its assets during such time and determined that it will need access to $1,008,547.54 in post-petition financing during the chapter 11 case.

26. Debtor has provided a budget to Banco Popular, which forecasts projected cash flow for the six (6) month period following the Petition Date, and which budget has been approved in form and substance by Banco Popular (as subsequently amended, modified, and updated from time to time, the "DIP Budget").[7] Debtor believes that the DIP Budget is feasible and will provide Debtor with sufficient liquidity to propose and confirm a chapter 11 plan, fund and satisfy essential financial obligations during such time, in order to preserve and maximize the value of Debtor's estate for the benefit of all parties in interest.

**C.     The DIP Facility**

27. The terms, conditions, and obligations under the DIP Facility are set forth in full in the DIP Term Sheet attached as **Exhibit B** to this Motion and **Exhibit 1** to the DIP Order, and are

---

[7]   The DIP Budget is included as Annex 2 to the DIP Term Sheet.

hereby incorporated as if set forth in full herein. In addition, a summary of such terms, conditions, and obligations is set forth in pages 2-5 above.

## Use of Cash Collateral and Adequate Protection

28. Most, if not all, of the cash, cash equivalents, and other amounts on deposit or maintained in Debtor's bank accounts constitute proceeds that are the cash collateral of Banco Popular in accordance with section 552(b) of the Bankruptcy Code (collectively, the "Cash Collateral").

29. Debtor requires the use of the Cash Collateral to pay critical expenses necessary to continue the operation of its business. Therefore, Debtor has requested from Banco Popular that Banco Popular agree and authorize Debtor, to use certain of Banco Popular's Cash Collateral during the Bankruptcy Case. Banco Popular is willing to authorize such use solely under, and in reliance upon, the terms and conditions and adequate protection set forth herein and in the DIP Term Sheet (in Section 19, among others, therein) and the DIP Order (collectively, the "Adequate Protection Provisions"). The terms, conditions, and obligations as to the use of Cash Collateral are set forth in full in the DIP Term Sheet attached as **Exhibit B** to this Motion and **Exhibit 1** to the DIP Order, and are hereby incorporated as if set forth in full herein. In addition, a summary of such terms, conditions, and obligations and the Adequate Protection Provisions is set forth in pages 2-5 above.

## The DIP Facility Should Be Authorized

30. Approval of the DIP Facility and the use of Cash Collateral will enable Debtor to confirm a chapter 11 plan, while satisfying its operating expenses and preserving the value of its assets. Because Debtor's available and projected Cash Collateral is insufficient to fund this case, the credit provided under the DIP Facility is essential to Debtor's successful reorganization. Absent the requisite financing, Debtor would not be able to maintain its operations, reorganize and Debtor's

estate would suffer irreparable harm. Accordingly, the timely approval of the relief requested herein is imperative.

31. Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize debtor to obtain credit (a) with priority over any and all administrative expenses as specified in section 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c). Section 364(d) of the Bankruptcy Code allows a debtor to obtain credit secured by a senior or equal lien on property of the estate that is subject to a lien, provided that (x) debtor is unable to obtain such credit otherwise and (y) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. 11 U.S.C. § 364(d).

32. Due to the exigent circumstances of the chapter 11 case, the fully encumbered nature of Debtor's assets, and the current condition of the capital markets, Debtor likely would be unable to obtain sufficient financing without granting priming liens pursuant to section 364(d) of the Bankruptcy Code. Furthermore, Debtor does not believe that it could procure post-petition financing or other financial accommodations from any other prospective lender on terms and conditions more favorable than the proposed DIP Facility. Accordingly, Debtor proposes to obtain the financing set forth herein by providing, among other things, super-priority claims, security interests, and liens pursuant to sections 364(c)(1), (2), (3), and (d) of the Bankruptcy Code.

33. Debtor negotiated with Banco Popular regarding the DIP Facility, the use of Cash Collateral, and the adequate protection obligations extensively and at arm's length. So long as a debtor's business judgment does not run afoul of the letter and spirit of the Bankruptcy Code, courts grant a debtor considerable discretion with respect to post-petition financing. See, e.g., Bray v.

Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co., Inc.), 789 F.2d 1085, 1088 (4th Cir. 1986); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); see also In Farmland Industries, Inc., 294 B.R. 855, 881-84 (Bankr. W.D. Mo. 2003); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985); In re Curlew Valley Assocs., 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).

34. A debtor is not required to seek alternative financing from every possible lender in order to satisfy the requirements of section 364(d) of the Bankruptcy Code. In re 495 Central Park Ave. Corp., 136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992). Rather, a debtor need only demonstrate sufficient efforts to obtain financing from other sources without the granting of senior liens. Snowshoe, 789 F.2d at 1088 (debtor demonstrated that credit could not be obtained without the granting of a senior lien, in part by providing evidence that efforts to obtain financing from other financial institutions in the geographic area had proven unsuccessful).

35. All of Debtor's assets are encumbered, and given these limitations, Debtor has successfully negotiated post-petition financing on the best terms available. The circumstances of this chapter 11 case necessitate post-petition financing under sections 364(c) and (d) of the Bankruptcy Code. In light of the foregoing reasons, the DIP Facility reflects the exercise of Debtor's sound business judgment.

36. The terms and conditions of the DIP Facility are fair and reasonable, and were negotiated extensively by well-represented, independent parties in good faith and at arm's length. Accordingly, Banco Popular and all obligations incurred under the DIP Facility should be accorded the benefits of section 364(e) of the Bankruptcy Code.

## The Use of Cash Collateral Should Be Approved and the Proposed Adequate Protection Should Be Authorized

37. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral if "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). In addition to the DIP Facility, Debtor requires the use of Cash Collateral in order to ensure that it has the liquidity necessary to fund its business operations during this case. Absent authority to use Cash Collateral, Debtor's liquidity needs will not be satisfied, jeopardizing its ability to maximize value for the benefit of all parties in interest. Thus, the use of Cash Collateral is imperative to the success of the chapter 11 case.

38. Banco Popular has consented to the use of Cash Collateral on the terms set forth herein, and in the DIP Term Sheet, and its interests in the Cash Collateral are adequately protected as described herein. Accordingly, Debtor's request to use Cash Collateral should be approved.[8]

39. Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used by the trustee, the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens and other forms of the relief. 11 U.S.C. § 361. Adequate protection is an elastic concept, and accordingly, what constitutes adequate

---

[8] Notwithstanding any other provision hereof, the proposed adequate protection to Banco Popular sought pursuant hereto is without prejudice to the right of Banco Popular to seek modification of the grant of adequate protection set forth herein so as to provide different or additional adequate protection, and without prejudice to Debtor's right or any other party in interest to contest any such modification. The consent of Banco Popular to the priming of its liens on the pre-petition Collateral by the Priming DIP Liens (a) is limited to the DIP Facility authorized pursuant to the DIP Order, and shall not extend to any other postpetition financing or to any modified version or replacement of the DIP Facility and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Banco Popular that, absent such consent, its interests in the pre-petition Collateral would be adequately protected.

protection must be decided on a case-by-case basis.  See <u>MBank Dallas v. O'Connor (In re O'Connor)</u>, 808 F.2d 1393, 1396-97 (10th Cir. 1987); <u>Martin v. U.S. (In re Martin)</u>, 761 F.2d 472, 474 (8th Cir. 1985).  The focus of the inquiry is whether a secured creditor is protected from diminution in the value of its interest in the collateral during the period of use.  See <u>In re Swedeland Dev. Group, Inc.</u>, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained pre-bankruptcy") (internal citations omitted).

40.  In consideration for the Adequate Protection Provisions, Banco Popular has consented to Debtor's use of Cash Collateral and entry into the DIP Facility.  The Replacement Liens, Adequate Protection Payments, super-priority claims, and other protections afforded to Banco Popular provide ample protection against any diminution in the value of its interests in the Collateral.  Accordingly, the adequate protection proposed herein is fair, reasonable, and sufficient to satisfy the requirements of sections 363(c)(2) and (e) of the Bankruptcy Code.  Similar adequate protection terms have been approved in other cases in this district.  See <u>e.g.</u>, <u>In re PMC Marketing Corp.</u>, Case No. 09-02048 (BKT); <u>In re Certenejas Incorporated</u>, Case No. 09-08468 (ESL).

### The Automatic Stay Should Be Modified on a Limited Basis

41.  The relief requested herein contemplates a modification of the automatic stay pursuant to section 362 of the Bankruptcy Code to (a) permit Debtor to grant the security interests, liens, and super-priority claims described above with respect to Banco Popular, as the case may be, and to perform such acts as may be reasonably requested to assure the perfection and priority of such security interests and liens, (b) permit Banco Popular to exercise (solely with respect to the DIP Facility), upon the occurrence and continuance of an Event of Default and after ten 10(5) business days' written notice thereof, the rights and remedies provided in the DIP Documents herein and the DIP Order, as applicable, and (c) implement the terms of the proposed DIP Orders.  In

Debtor's business judgment, the stay modification requested herein is fair and reasonable under the circumstances.

## Waiver of Fed. R. Bankr. P. 6004(a) and (h)

55. To implement the foregoing immediately, Debtor seeks a waiver of the notice requirements under Fed. R. Bankr. P. 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Fed. R. Bankr. P. 6004(h).

WHEREFORE, Debtor and Banco Popular respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

## LOCAL RULE CERTIFICATION

The undersigned hereby certify that, pursuant to the requirements of Local Bankruptcy Rule 9013-1(f) they have carefully examined the matters in the Motion and concluded that there is a true need for an emergency determination, for the reasons set forth above.

## NOTICE OF TIME TO RESPOND

Within twenty days after service as certified below, or such time as may be set by the Court, any party in interest who objects to the relief sought herein, shall serve and file an objection or other appropriate response to the Motion with the Clerk's Office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the Motion will be deemed unopposed and may be deemed automatically granted, unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interests of justice require otherwise.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

parties appearing in said system, including the U.S. Trustee and to the 20 largest creditors appearing on the Master Address List by first class mail.

San Juan, Puerto Rico, this 24th day of September, 2010.

        **CHARLES A. CUPRILL, P.S.C.**
        **LAW OFFICES**
        *Attorneys for Hospital Damas, Inc.*
        356 Fortaleza St., Second Floor
        San Juan, PR 00901
        Tel: (787) 977-0515
        Fax: (787) 977-0518

        *s/ Charles A. Cuprill-Hernández*
        Charles A. Cuprill- Hernández
        USDC-PR 114312

        -and-

        **O'NEILL & BORGES**
        *Attorneys for Banco Popular de Puerto Rico*
        American International Plaza
        250 Muñoz Rivera Avenue,
        Suite 800
        San Juan, Puerto Rico 00918-1813
        Tel:    (787) 764-8181
        Fax:   (787) 753-8944

        *s/ Luis C. Marini-Biaggi*
        Luis C. Marini-Biaggi
        USDC No. 222301
        E-mail: luis.marini@oneillborges.com

        *s/ Lourdes Arroyo-Portela*
        Lourdes Arroyo-Portela
        USDC No. 226501
        E-mail lourdes.arroyo@oneillborges.com