IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------------- x
: 
In re : Chapter 11
: 
HOSPITAL DAMAS, INC. : Case No. 10-08844
: 
Debtor :
: 
---------------------------------------------------------------------------- x

ORDER AUTHORIZING DEBTOR
TO OBTAIN POSTPETITION SENIOR SECURED FINANCING, USE OF
CASH COLLATERAL, AND PROVIDE ADEQUATE PROTECTION

Upon the motion (the "Motion") of Hospital de Damas, Inc. ("Debtor"), as debtor and debtor in possession in the above-captioned case and Banco Popular de Puerto Rico ("Banco Popular"), as the owner, as of April 30, 2010, of all credit relationships among Debtor and its affiliate, and Westernbank Puerto Rico ("Westernbank"), seeking, pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and P.R. Bankr. L.R. 4001-2, the Entry of an Order Authorizing Debtor to Obtain Post-Petition Senior Secured Financing, Use Cash Collateral, and Provide Adequate Protection, the hearing having been held by this Court on October __, 2010 and upon the record made by the Debtor at the hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Objections*. All objections to the entry of this Order, if any, are resolved hereby or, to the extent not resolved, are overruled. The rights of all parties to object to the entry of the final order are reserved.

2. *Notice*. Notice of the Motion, the relief requested therein and the Hearing was served by the Debtor on (i) the United States Trustee for the District of Puerto Rico (the "U.S. Trustee"), (ii) the holders of the twenty largest unsecured claims against the Debtor, (iii) each of the Debtor's prepetition secured lenders, (iv) Governmental, Tax Authorities, and (iv) the United States and the Puerto Rico Departments of Justice. Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and the Hearing constitutes due and sufficient notice thereof, complies with Bankruptcy Rules 4001(b) and (c), and no further notice is necessary or required.

3. *Amendment*. The DIP Facility[1] is and shall be, and shall be deemed to be and shall be treated for all purposes as, an extension of the credit available under the Pre-petition Loan Documents (specifically, the Term Loan and Line of Credit Agreement dated December 18, 2006, as amended on October 8, 2008 and at any time thereafter) pursuant to the Amendment.

4. *Debtor's Stipulations*. Debtor has made a number of stipulations in the Motion and the DIP Term Sheet including, without limitation, those set forth on section 19 of the DIP Term Sheet (collectively, the "Stipulations"). The Stipulations are hereby approved in their entirety.

5. *Findings Regarding Section 364(e)*. The DIP Documents and the use of Cash Collateral have been the subject of extensive negotiations conducted in good faith and at arm's length among Debtor and the Postpetition Lender, and all of Debtor's obligations and indebtedness arising under, in respect of or in connection with the DIP Facility, including without limitation, all DIP Loans made to Debtor pursuant to the DIP Facility and the DIP Obligations shall be deemed to have been extended by the Postpetition Lender in "good faith" as

---

[1] Unless otherwise indicated, capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the DIP Term Sheet.

2

that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

6. *Approval and Authorization of the DIP Facility, the Motion, and the DIP Term Sheet.* The Motion, DIP Term Sheet and the annexes and exhibits thereto are hereby approved in their entirety and incorporated as if set forth in full herein (the DIP Term Sheet is included as Exhibit 1 to this DIP Order). In furtherance of the foregoing and without further approval of the Court, Debtor is authorized to perform all acts and to execute and deliver all documents necessary for Debtor's performance of its obligations under the DIP Documents and this Order.

7. *Superpriority Claims.* Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against Debtor with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre and postpetition property of Debtor and all proceeds thereof, subject only to the payment of the Carve-Out to the extent specifically provided for herein.

3

8.      *DIP Liens*.  The DIP Obligations shall be secured by valid, binding, enforceable, non-avoidable and automatically perfected postpetition first priority liens (all such liens and security interests granted to the Postpetition Lender, pursuant to this Order and the DIP Facility, the "DIP Liens") on and security interests in and upon all prepetition and postpetition properties and assets of Debtor, whether owned on the DIP Closing Date or at any time thereafter acquired or created by Debtor or in which the Debtor now has or at any time in the future may acquire any right, title or interest (collectively, the "Collateral"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise, of Debtor's obligations under the DIP Facility, including but not limited to: (a) all the equity interests held by Debtor, (b) all intercompany notes, accounts receivable, any other liabilities or payment or repayment obligations, or other obligations owed to Debtor by any of its affiliates, (c) all of Debtor's interest in or right to insurance proceeds and payments of any kind under insurance policies, or otherwise, (d) Debtor's rights under section 506(c) of the Bankruptcy Code, and (e) all tangible and intangible real (owned and leased) and personal property of Debtor (including but not limited to accounts, chattel paper, contracts, deposit accounts, goods, documents, inventory, equipment, general intangibles, investment property, intellectual property and intellectual property licenses, investment property, real property, cash, securities accounts, commercial tort claims, other claims, chooses in action, causes of action, letter of credit rights, intercompany notes, leases, leasehold improvements, rents, and all proceeds and supporting obligations, all books and records pertaining to the Collateral, and products and proceeds of any and all of the foregoing and all collateral security and guarantees given with respect to any of the foregoing),[2] all of the foregoing now owned or in which Debtor

---

[2]   The following terms which are defined in the Uniform Commercial Code in effect in the Commonwealth of Puerto Rico on the date hereof are used in this paragraph as so defined: accounts, certificated security, chattel

4

has any interest (and without regard to whether acquired prior or subsequent to the Petition Date) or hereafter acquired or in which Debtor obtains an interest and the products and proceeds thereof (including any action under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code (the "Avoidance Actions") and the proceeds thereof. The DIP Liens shall be effective and perfected upon the date of this Order and without the necessity of the execution and recordation of filings by Debtor of security agreements, control agreements, pledge agreements, financing statements or other similar documents.

9. *DIP Lien Priority*. The DIP Liens are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code and have the following priority:

(a) First Lien on Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien, not subject to subordination, upon all Collateral that, on or as of the Petition Date is not subject to any valid, perfected and non-avoidable liens existing as of the Petition Date (collectively, "Unencumbered Property").

(b) Liens Priming Prepetition Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming security interest in and lien, not subject to subordination, upon all Collateral that on or as of the Petition Date was subject to any valid, perfected, and non–avoidable liens existing as of the Petition Date under the Pre Petition Loan Documents (the "Prepetition Loan Agreement Liens").

10. *Liens Senior to Certain Other Liens*. The DIP Liens and the Replacement Liens (as defined below) shall not be (i) subject, junior or subordinate to (A) any lien or security

---

paper, commercial tort claims, documents, equipment, general intangibles, goods, instruments, inventory and supporting obligations.

5

interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor or (ii) subordinated to or made pari passu with any other lien or security interest under section 363 or 364 of the Bankruptcy Code or otherwise.

11. *Protection of Postpetition Lender's Rights; Relief From Stay.* The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified, solely with respect to the DIP Facility and the Recoupment (as defined in Paragraph 19 of the DIP Term Sheet) subject to the terms and conditions set forth therein, to the extent necessary to permit Banco Popular to exercise, upon the occurrence of an Event of Default and after ten (10) business days' prior written notice of such Event of Default (such ten (10) business day period, the "Remedies Notice Period") (provided, for the avoidance of doubt, that the automatic stay shall remain in full force and effect during the Remedies Notice Period unless the Court shall have determined that an Event of Default has occurred and is continuing), which written notice shall be provided by Banco Popular to Debtor, counsel to Debtor and the U.S. Trustee, and which notice shall be filed with the Court, all rights and remedies against the Collateral provided for in the DIP Documents or in this Order (including, without limitation, the right to setoff monies of Debtor in accounts maintained with or under the control of Banco Popular or its affiliates, requiring the Debtor's commercially reasonable efforts (subject to applicable law) to sell the Collateral at the request of Banco Popular, foreclosing on the Collateral, effecting the Recoupment, or otherwise selling the Collateral, and directing that Banco Popular and its representatives be granted access to all locations of the Collateral in support of the enforcement and exercise of such remedies);

<u>provided</u>, <u>that</u> such stay shall not be automatically terminated as provided above if, during the Remedies Notice Period, the Court has determined that an Event of Default has not occurred and/or is not continuing. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred, and Debtor hereby waives its right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of Banco Popular set forth in this DIP Order or the DIP Documents.

12. *No "Mashalling"*. In no event shall Banco Popular be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

13. *Limitation on Charging Expenses Against Collateral*. No costs and expenses of preserving or disposing of the prepetition Collateral or the Collateral, and no expenses of administration of the Case or any future proceeding that may result therefrom (including liquidation in bankruptcy, the commencement of any action adverse to Banco Popular or its rights hereunder, under the DIP Documents or under any other order, or other proceedings under the Bankruptcy Code), except to the extent of the Carve-Out, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of Banco Popular, and no such consent shall be implied from any other action, inaction, or acquiescence by Banco Popular.

14. *Perfection of DIP Liens and Replacement Liens*. Banco Popular is hereby authorized, but not required, in its sole discretion to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any

jurisdiction or take any other action in order to validate and perfect the liens and security interests granted thereto hereunder (collectively, the "Lien Recording Documents") and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified and vacated to permit Banco Popular to take such actions. Whether or not Banco Popular shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted thereto hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of this DIP Order and this DIP Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the liens and security interests granted herein, effective as of the date of this DIP Order. To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the liens authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of this Court (provided, that if Banco Popular takes steps to perfect its liens under otherwise applicable state law, they do so without waiving the benefits of this provision of this DIP Order). Debtor shall execute and deliver to Banco Popular all such agreements, financing statements, instruments and other documents as Banco Popular may reasonably request to evidence, confirm, validate or perfect the DIP Liens and Replacement Liens granted pursuant hereto. Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold

8

interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of the DIP Liens or Replacement Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by Debtor, in favor of Banco Popular in accordance with the terms of the DIP Term Sheet or this Order.

15. *Effect of Stipulations on Third Parties*. The Stipulations, and any admissions, releases and waivers contained in the DIP Order, the Motion and/or the DIP Term Sheet shall be binding upon Debtor and all other parties in interest, including, without limitation, any committee. Accordingly, (i) the obligations under the Prepetition Loan Documents shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Case and any subsequent chapter 7 case, (ii) the Prepetition Loan Agreement Liens on the prepetition Collateral shall be deemed to be legal, valid, binding, perfected, not subject to recharacterization, subordination, avoidance or reduction and (iii) the obligations under the Prepetition Loan Documents, the Prepetition Loan Agreement Liens, the Prepetition Collateral and Banco Popular shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from, seeking to exercise the rights of Debtor's estate, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for Debtor). Nothing in this DIP Order vests or confers on any Person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to Debtor or its estate.

14. *Order Governs*. In the event of any inconsistency between the provisions of this DIP Order and the DIP Documents, the provisions of this DIP Order shall govern. For the

9

avoidance of doubt, the failure to include any term, condition, or provision of the DIP Term Sheet in this DIP Order shall not affect the validity, enforceability, or binding nature of any such terms, conditions, and provisions of the DIP Term Sheet, all of which such terms are hereby approved and incorporated, by reference, in full.

15. *Binding Effect; Successors and Assigns*. The DIP Term Sheet and the provisions of this DIP Order, including all findings herein, shall be binding upon all parties in interest in this case, including, without limitation, Banco Popular, any committee, Debtor and its respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary hereafter appointed as a legal representative of Debtor or with respect to the property of the estate of Debtor) and shall inure to the benefit of Banco Popular and Debtor and each of their respective successors and assigns; provided, that Banco Popular shall have no obligation to extend any financing to any chapter 7 or chapter 11 trustee or similar responsible person appointed for Debtor's estate and/or to consent to use of Cash Collateral in a chapter 7 case or after appointment of a chapter 11 trustee or other legal representative of Debtor.

16. *Section 552*. In light of its agreement to subordinate its liens and superpriority claims, Banco Popular is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

17. *Effectiveness*. This DIP Order shall constitute findings of fact and conclusions of law and, notwithstanding the possible application of Bankruptcy Rule 6004(h), shall take effect immediately upon execution hereof.

San Juan, Puerto Rico, this    day of September 2010.

_____
United States Bankruptcy Judge