**DRAFT**
**FOR DISCUSSION**

**PURPOSES ONLY**

## HOSPITAL DAMAS, INC.

**Term Sheet for $1,008,547.54 Senior Secured Superpriority Priming**
**DIP Financing Facility**

**Summary of Principal Terms and Conditions**

| | | |
|---|---|---|
| 1. | **Bankruptcy Cases** | The transactions described herein contemplate the commencement by Hospital Damas, Inc., ( "Debtor") of a voluntary chapter 11 case (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Puerto Rico (the "Court") pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on or before September 30, 2010 (the actual commencement date being the "Commencement Date"). |
| 2. | **Construction** | As used in the DIP Term Sheet, the other DIP Documents, the DIP Order (each as defined below) and any certificate or other document made or delivered pursuant hereto or thereto, (a) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to, including but not limited to, any and all tangible and intangible real and personal assets and properties, including cash, capital stock in any corporation and any and all equivalent ownership interests in any other entity, securities, revenues, accounts, leasehold interests and contract rights, claims, actions, choses in action, causes of action and any proceeds of the foregoing and (b) the words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation." |
| 3. | **DIP Borrower; DIP Obligations** | Debtor (the "DIP Borrower") shall be liable for the DIP Obligations (as defined below).<br><br>As used in the DIP Term Sheet, the other DIP Documents, the DIP Order (each as defined below) and any certificate or other document made or delivered pursuant hereto or thereto, the term "DIP Obligations" means (a) the due and punctual payment by the DIP Borrower of (i) the unpaid principal amount of and interest on (including interest accruing after the maturity of the DIP Loans (as defined below) and interest accruing after the commencement of any case or proceeding by or against the DIP Borrower under any federal or state bankruptcy, insolvency, receivership or similar law, whether or not allowed in such case or proceeding) on the DIP Loans (as defined below), as and when due, whether at maturity, by acceleration or otherwise, and (ii) all other monetary obligations, including fees, costs, expenses and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, fixed or otherwise, |

| | | |
|---|---|---|
| | | of the DIP Borrower to the Postpetition Lender under the DIP Term Sheet, the other DIP Documents and the DIP Order (each as defined below) and (b) the due and punctual payment and performance of all covenants, agreements, obligations and liabilities of the DIP Borrower to the Postpetition Lender under or pursuant to the DIP Term Sheet, the other DIP Documents, and the DIP Order (each as defined below). |
| 4. | **Postpetition Lender** | Banco Popular de Puerto Rico, in its capacity as the lender under the DIP Facility (as defined below) (the "Postpetition Lender"). |
| 5. | **DIP Facility** | A total aggregate amount that shall not exceed at any time $1,008,547.54 (the "DIP Facility") in debtor-in-possession senior secured superpriority priming revolving credit facility funded pursuant to the credit being made available under the Pre-Petition Loan Documents[1] (specifically, the Term Loan and Line of Credit Agreement dated December 18, 2006, as amended on October 8, 2008 and at any time thereafter (the "Pre-Petition Term Loan") to be made available to the DIP Borrower until the Maturity Date (as defined below) and the balance of which facility shall never exceed the maximum aggregate principal amount provided above and which DIP Facility shall be available to the DIP Borrower in accordance with and be governed by the terms of the DIP Term Sheet and the other DIP Documents (as defined below) and shall be subject to any Borrowing Base (as defined in the Prepetition Loan Agreement) or any other applicable lending formulas contained in the Prepetition Loan Agreement. |
| 6. | **Purpose and Effect of Amendment** | The DIP Facility is and shall be, and shall be deemed to be and shall be treated for all purposes as, an extension of credit pursuant to the credit made available under the Prepetition Loan Documents (specifically, the Term Loan and Line of Credit Agreement dated December 18, 2006, as amended on October 8, 2008 and at any time thereafter) pursuant to an amendment thereto (as may be amended, amended and restated, modified or supplemented from time to time, the "Amendment"). The DIP Borrower and all signatories and parties herein hereby agree, consent to, confirm and acknowledge that the DIP Facility and related amendments to be performed by the parties to the DIP Facility and Amendment are not intended to constitute an extinctive novation ("novación extintiva") of the obligations and undertakings of any of the parties under any of the Prepetition Loan Documents (as defined below), as amended to date. |

---

[1]      The term Pre-Petition Loan Documents shall have the meaning ascribed to such term in the "Urgent Joint Motion for Entry of an Order Authorizing Debtor to Obtain PostPetition Senior Secured Financing, Use Cash Collateral, and Provide Adequate Protection" (the "Motion").

| | | |
|---|---|---|
| 7. | **Definitive DIP Documentation** | On the DIP Closing Date (as defined below), the DIP Borrower, Fundación Damas, Inc. and any other guarantors of the obligation under the Pre-Petition Loan Documents (collectively, the "Guarantor"), and the Postpetition Lender, shall execute this Summary of Principal Terms and Conditions (the "DIP Term Sheet"). The DIP Borrower shall execute and deliver to the Postpetition Lender the DIP Term Sheet (together with the Borrowing Request) and the Note (as defined below) as a condition to the occurrence of the DIP Closing Date (as defined below) and the initial funding. The DIP Term Sheet shall be binding upon the DIP Borrower, the Guarantor and the Postpetition Lender, subject only to satisfaction of the conditions set forth in Section 9 of the DIP Term Sheet and on <u>Exhibit B</u> hereto. Subsequent to the Commencement Date and prior to entry of the DIP Order (as defined below), the DIP Borrower, the Guarantor and the Postpetition Lender shall agree upon the form of the final documentation of the Amendment evidencing the DIP Facility consistent with the DIP Term Sheet (collectively, and together with the DIP Term Sheet and the Note, the "DIP Documents"), which will include the terms and provisions set forth in the DIP Term Sheet and such other provisions as to which the DIP Borrower, the Guarantor and the Postpetition Lender may agree. The DIP Documents (other than the DIP Term Sheet and the Note, which shall be binding upon the DIP Borrower, the Guarantor and the Postpetition Lender upon satisfaction of the conditions set forth in Section 9 of the DIP Term Sheet and on Exhibit B hereto) shall be binding upon the DIP Borrower, the Guarantor and the Postpetition Lender, subject only to (i) approval of the Court and entry of the DIP Order (as defined below) and (ii) the absence of an Event of Default (as defined below) under the DIP Term Sheet. |
| | | Failure by the parties hereto to execute the Amendment shall not release the Postpetition Lender, the DIP Borrower nor the Guarantor from any of their obligations hereunder, under the Note (as defined below) or under the DIP Order. |
| 8. | **Interest Rate** | Outstanding amounts under the DIP Facility shall accrue interest until indefeasible payment in full in cash at a rate of 0.25 basis points per annum (the "Non-Default Rate") over and above the Base Rate (as defined below). Accrued interest shall be payable monthly in arrears not later than the first day of each calendar month and shall be calculated on the basis of a 360-day year and actual days elapsed. Default interest shall be equal to five (5) basis points over the prime rate and shall automatically accrue on and after occurrence and during the continuance of an Event of Default (as defined below) under the DIP Term Sheet and shall be payable on demand. |
| | | The term Base Rate shall mean for any period, a fluctuating interest rate per annum that shall at all times be equal to the rate announced by Citibank in New York, New York, as its prime or base rate, with each change in such rate to be effective for purposes hereof on the day on which such change is published in the Wall Street Journal, whether or not such change is notified by the Bank to the Borrowers. |

| | |
|---|---|
| **9. DIP Closing Date; Conditions to Closing** | No later than three (3) business days after entry of the DIP Order (as defined below) (the "DIP Closing Date"). |
| | The occurrence of the DIP Closing Date and the initial extension of credit shall be subject to satisfaction of the conditions precedent set forth on <u>Exhibit B</u> hereto and to the following conditions precedent: (i) that an order approving the DIP Borrower's entry into the DIP Facility, substantially identical to the proposed order submitted with the Motion (the "DIP Order") shall have been entered by the Court within sixty (60) days of the Commencement Date, and (ii) that the DIP Order shall be in full force and effect, shall not have been reversed, modified (except for modifications that are acceptable to the Postpetition Lender in its discretion and the DIP Borrower), amended (except for amendments that are acceptable to the Postpetition Lender in its discretion and the DIP Borrower), stayed or vacated. |
| **10. Funding** | Each funding (including the initial funding) made under the DIP Facility (each a "DIP Loan" and collectively, the "DIP Loans") shall be (i) subject to the conditions precedent set forth in Section 23 of the DIP Term Sheet and (ii) made available to the DIP Borrower in accordance with the following procedures: the Postpetition Lender shall make DIP Loans to the DIP Borrower within five (5) business days upon receipt of a borrowing request from the DIP Borrower (each, a "Borrowing Request") in accordance with the DIP Budget (as defined below) and the DIP Documents. |
| **11. Maturity Date** | Unless accelerated by an Event of Default (as defined below), the maturity date of the DIP Facility shall be the earliest to occur of (i) consummation of any consensual or nonconsensual (including under section 1129(b)(2)(A)(i), (ii) and/or (iii) of the Bankruptcy Code) chapter 11 plan of reorganization or liquidation or for the DIP Borrower, whether proposed by the DIP Borrower or any other party, or (ii) one hundred eighty (180) days after the Commencement Date (the "Maturity Date"). The Maturity Date shall be accelerated upon the occurrence of an Event of Default (as defined below), subject to the Remedies Notice Period (as defined below). |
| **12. Use of DIP Facility Proceeds** | Subject to a six month budget (divided per month), in form and substance satisfactory and agreeable to the DIP Borrower, the Postpetition Lender, and the Prepetition Lender, annexed hereto as <u>Annex A</u> (the "DIP Budget"), the DIP Loans, and cash collateral of the Prepetition Lender (as defined in Bankruptcy Code section 363, "Cash Collateral"), shall be used to fund (i) the consummation of a plan of reorganization or liquidation (subject to certain conditions as set forth in the DIP Term Sheet); (ii) payment of the Postpetition Lender's monthly interest, principal, out-of-pocket costs, fees, and expenses related to the DIP Facility; (iii) employee wages and general corporate purposes |

| | |
|---|---|
| | of the DIP Borrower during the pendency of the Bankruptcy Case; (iv) payment of operating expenses during the Bankruptcy Case as set forth in the DIP Budget; (v) payment of the Adequate Protection Payments (as defined below); and (vi) payment of the amounts allowed through the Carve-Out (as defined below) for payment of quarterly fees to the Office of the United States Trustee for the District of Puerto Rico (the "U.S. Trustee") and the approved and allowed fees and expenses of the Debtor's professionals, in each instance subject to the Limitations (as defined below). |
| | For the avoidance of doubt, (A) the DIP Borrower may amend the DIP Budget with the written consent of the Postpetition Lender; provided, that the total amount of funding provided pursuant to the DIP Budget shall not exceed the total amount of the DIP Facility authorized by the DIP Order; and (B) at any given time, the DIP Borrower's actual cash disbursements may, on a cumulative basis, vary from the DIP Budget by no more than 15% (the "Permitted Variance"). The DIP Borrower shall provide the Postpetition Lender with monthly and cumulative variance reporting on a line item basis, which reporting shall (1) detail the variance, if any, of actual cash disbursements and actual cash receipts from the DIP Budget and (2) provide an explanation of any per line item variance greater than 15% (the "Variance Report"). |
| **13. DIP Budget** | In addition to the continuing representations, warranties and covenants heretofore and hereafter made by the DIP Borrower to the Postpetition Lender, and not in limitation thereof, the DIP Borrower hereby represents, warrants and covenants to the Postpetition Lender the following (which shall survive the execution and delivery of the DIP Term Sheet and the other DIP Documents), the truth and accuracy of which, or compliance with, shall be a continuing condition of the making of DIP Loans by the Postpetition Lender: |
| | The DIP Borrower has prepared and delivered to the Postpetition Lender the DIP Budget. The DIP Budget has been thoroughly reviewed by the DIP Borrower and its management and sets forth for the periods covered thereby: (i) projected monthly operating cash receipts for each month commencing on October, 2010, (ii) projected monthly operating cash disbursements for each month commencing on October, 2010, and (iii) projected aggregate principal amount of outstanding DIP Loans for each month. In addition to the DIP Budget, the DIP Borrower shall furnish to the Postpetition Lender the monthly Variance Report by no later than the fifteenth (15th) calendar day after the last day of each month covered by such report. The DIP Borrower and the Guarantor hereby confirm, acknowledge and agree that (i) a failure to maintain the Permitted Variance in the DIP Budget shall constitute a material deviation from the DIP Budget and, subject to a grace period of ten (10) business days, an Event of Default, and (ii) the failure to timely deliver the DIP Budget, any Variance Report or any related reports or certifications with respect to the DIP Budget, in form and substance satisfactory to the Postpetition Lender, shall, subject to a grace period of ten (10) business days, constitute an Event of Default. Notwithstanding any approval by the Postpetition Lender of the DIP |

| | |
|---|---|
| | Budget, the Postpetition Lender will not, and shall not be required to, provide any DIP Loans to the DIP Borrower pursuant to the DIP Budget, but shall only provide DIP Loans in accordance with the terms and conditions set forth in the DIP Term Sheet, the other DIP Documents, and the DIP Order, as applicable, subject to the DIP Budget. |
| **14. Insurance Proceeds** | Any and all proceeds of and any payments under the property, casualty, general liability or other insurance policies of the DIP Borrower that are received by the DIP Borrower during the pendency of the Bankruptcy Case (the "Insurance Proceeds") shall be (i) paid to the Prepetition Lender as adequate protection in accordance with Section 19 of the DIP Term Sheet and (ii) applied to reduce the outstanding obligations under the Prepetition Loan Agreement. |
| **15. Cash Collateral** | Pursuant to sections 361, 362 and 363 of the Bankruptcy Code, the DIP Borrower shall be entitled to use, until the Maturity Date (unless terminated as a result of the occurrence of an Event of Default), the Cash Collateral and all other assets and property on which the Prepetition Lender has a lien or security interest pursuant to the Prepetition Loan Documents (together with the Cash Collateral, the "Prepetition Collateral") subject to the provisions for adequate protection set forth in the Motion, in this DIP Term Sheet and in the DIP Order. The Prepetition Lender's consent to the use of Cash Collateral and Debtor's right to use the Cash Collateral shall terminate automatically on the Maturity Date or upon the occurrence of an Event of Default – provided, however, that the adequate protection provisions contained herein shall remain in full force and effect at all times. |
| **16. Limitations** | Except as provided below, no Collateral (as defined below), Cash Collateral, Carve-Out (as defined below), DIP Loans, proceeds of the Prepetition Collateral, proceeds of the Collateral (as defined below) or advances under the Prepetition Loan Agreement, the DIP Documents, or the DIP Order may be used to (a) object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under the DIP Facility or the Prepetition Loan Documents or any financing agreements contained or referred to in the Prepetition Loan Documents (the "Financing Agreements") or any security agreements contained or referred to in the Prepetition Loan Agreement (the "Security Agreements") or the DIP Documents, or the liens or claims granted under the DIP Order, the DIP Facility, the DIP Documents or the Prepetition Loan Documents, (b) assert any claims, defenses or causes of action against the Postpetition Lender, the Prepetition Lender or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the Postpetition Lender's or the Prepetition Lender's assertion, enforcement or realization on the Cash Collateral, Prepetition Collateral, or the Collateral (as defined below) in accordance with the DIP Order, the DIP Facility, the DIP Documents or the Prepetition Loan Documents, (d) seek to modify any of the rights granted to the |

| | |
|---|---|
| | Postpetition Lender or the Prepetition Lender hereunder, under the DIP Order, the DIP Facility, the DIP Documents or the Prepetition Loan Documents, (e) pay any professional fees or expenses incurred by any Case Professional (as defined below) or other professional in connection with any of the foregoing (except to contest during the Remedies Notice Period the occurrence and/or continuance of an Event of Default), or (f) any act which has or could reasonably be expected to have a material adverse effect with respect to the rights of the Postpetition Lender or the Prepetition Lender, or which is contrary to any term or condition set forth in or acknowledged by the DIP Documents, the DIP Facility, the DIP Order, in each foregoing case without the Postpetition Lender's and the Prepetition Lender's prior written consent. The foregoing limitations set forth in clauses (a) through (f) above (collectively, the "Limitations") shall apply in all instances. |
| **17. Security** | The DIP Borrower hereby grants to the Postpetition Lender a perfected security interest in and lien (as defined in section 101(37) of the Bankruptcy Code) (the "DIP Liens") upon all prepetition and postpetition properties and assets of the DIP Borrower, whether owned on the DIP Closing Date or at any time thereafter acquired or created by the DIP Borrower or in which the DIP Borrower now has or at any time in the future may acquire any right, title or interest (collectively, the "Collateral"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise), of the DIP Borrower's obligations under the DIP Facility, including but not limited to: (a) all the equity interests held by the DIP Borrower, (b) all intercompany notes, accounts receivable, any other liabilities or payment or repayment obligations, or other obligations owed to the DIP Borrower by any of its affiliates, (c) all of the DIP Borrower's interest in or right to insurance proceeds and payments of any kind under insurance policies, or otherwise, (d) the DIP Borrower's rights under section 506(c) of the Bankruptcy Code, (e) all tangible and intangible real (owned and leased) and personal property of the DIP Borrower (including but not limited to accounts, chattel paper, contracts, deposit accounts, goods, documents, inventory, equipment, general intangibles, investment property, intellectual property and intellectual property licenses, investment property, real property, cash, securities accounts, commercial tort claims, other claims, choses in action, causes of action, letter of credit rights, intercompany notes, leases, leasehold improvements, rents, and all proceeds and supporting obligations, all books and records pertaining to the Collateral, and products and proceeds of any and all of the foregoing and all collateral security and guarantees given with respect to any of the foregoing), and (f) any and all of the causes of action arising under chapter 5 of the Bankruptcy Code and any proceeds thereof (the "Avoidance Actions"), having the priority set forth in Section 18 of the DIP Term Sheet.

The following terms which are defined in the Uniform Commercial Code in effect in the Commonwealth of Puerto Rico, and titled as the "Commercial Transactions Act", on the date hereof, are used in this Section 17 as so defined: accounts, certificated security, securities, chattel paper, documents, equipment, |

| | |
|---|---|
| | general intangibles, goods, instruments and inventory. |
| **18. Priority** | All DIP Obligations shall: |
| | (i)  have superpriority administrative claim status, pursuant to section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code (the "Superpriority DIP Claims"); and |
| | (ii)  be secured, pursuant to section 364(d)(1) of the Bankruptcy Code, by perfected first priority, priming security interests and liens in and on all Collateral, not subject to subordination, or any other liens, including without limitation, the prepetition liens (the "Prepetition Loan Agreement Liens") granted to or for the benefit of the Prepetition Lender under the Prepetition Loan Documents, which liens in each case shall be primed and made subject to and subordinate to the perfected first priority priming liens (the "Priming DIP Liens") to be granted to the Postpetition Lender; and |
| | (iii)  be secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by perfected first priority security interests and liens not subject to subordination, in and on all Collateral that is not otherwise subject to a valid, perfected and unavoidable lien existing as of the Commencement Date; and |
| | in each case subject only in the event of the occurrence and during the continuance of an Event of Default to the Carve-Out (as defined below) and any exceptions for which the Postpetition Lender has provided its prior written consent. |
| **19. Conditions to Priming; Adequate Protection; Stipulations and Waivers** | Pursuant to sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, as adequate protection of and protection against any diminution in, the value as of the Commencement Date of the Prepetition Lender's liens on, security interests in, and any other interests in property of the DIP Borrower and/or the Guarantor as of the Commencement Date, the Prepetition Lender shall be granted as adequate protection in the DIP Order the adequate protection provisions set forth below, in the Motion, and the DIP Order. |
| | (a) Replacement Liens.  Debtor hereby grants to Banco Popular a replacement lien and a post-petition security interest on all of the assets and Collateral acquired by Debtor from the Petition Date through the Termination, as provided in the Pre-Petition Loan Documents, as entered into pre-petition, to the same extent and priority, and on the same types of property, as Banco Popular's liens and security interests in the pre-petition Collateral and, without limitation, on all of the Debtor's leases and leasehold interests (the "Replacement Liens"). The Replacement Liens shall be deemed effective and perfected as of the Petition Date without the necessity of the execution or filing by Debtor or Banco Popular of any additional security agreements, pledge agreements, financing statements or other agreements; provided, however, that such Replacement Liens shall be junior in priority only to the Priming DIP Liens. |
| | (b) Super-Priority Claim.  Banco Popular is hereby granted a super-priority |

claim in an amount equal to any diminution in value of the pre-petition Collateral, including, without limitation, Banco Popular's interest in the Cash Collateral, resulting from Debtor's use of the pre-petition Collateral and Cash Collateral and the imposition of the automatic stay, having priority over all administrative expenses specified in Sections 503(b) and 507 of the Bankruptcy Code (the "Super-Priority Claim"). The Super-Priority Claim shall be junior to the Superpriority DIP Claims.

(c) Section 506(c) Waiver.  Debtor hereby covenants and agrees to waive any and all rights under Section 506(c) of the Bankruptcy Code as to any of the Prepetition Collateral and/or Collateral.

(d) Reporting Rights.  Debtor shall submit to Banco Popular bi-weekly reports detailing: (a) the amount, aging, and description of all of Debtor's accounts receivable, inventory and other cash collateral; and (b) the amount of cash collateral collected and/or used to satisfy the disbursements authorized pursuant to the DIP Budget  (collectively, the "Reports").   The Reports shall be submitted on Monday of each two week period, detailing the respective activities as of the end of the prior two weeks.

(e) Repayment.  Repayment of the obligations to Banco Popular under the DIP Facility and payment of the Adequate Protection Payments (as defined below) to Banco Popular, and any other adequate protection payments made in the Bankruptcy Case, shall be made or deemed to be made with the proceeds of property of Debtor, if any, that is not encumbered by perfected, valid, enforceable and unavoidable liens under the Pre-Petition Loan Documents.

(f). Credit Bid.   Banco Popular shall have the right to credit bid the indebtedness owed thereto under the Pre-Petition Loan Documents and/or the DIP Facility, in whole or in part, in connection with any sale or disposition of assets of Debtor (whether or not such asset sale or disposition is undertaken or proposed under or pursuant to the terms of any consensual or nonconsensual (including under section 1129(b)(2)(A)(i), (ii) and/or (iii) of the Bankruptcy Code) chapter 11 plan of reorganization or liquidation of or for Debtor, whether proposed by Debtor, any creditor's committee or any other party, by motion under section 363 of the Bankruptcy Code, or otherwise under applicable law) and Debtor hereby waives all rights to oppose such credit bid rights of Banco Popular.

(g) Adequate Protection Payment.  Pursuant to Sections 361 of the Bankruptcy Code, as additional adequate protection, Debtor shall pay to Banco Popular, on the first day of each month, the amounts due for principal and interest under the Pre-Petition Loan Documents between Banco Popular (and Westernbank, as applicable) and the Debtor (the "Adequate Protection Payments").   The Adequate Protection Payment shall be applied to the principal of Debtor's pre-petition obligation to Banco Popular.

(h) Insurance.   Debtor agrees to maintain adequate insurance on all of the Collateral from and after the Petition Date, and to (a) list the Pre-Petition Lender as an additional insured and loss payee under the corresponding

insurance policies, and (b) upon request, provide to Banco Popular evidence of such insurance (the "Insurance Obligation").

(i). Setoff/Recoupment. Debtor and the Guarantor hereby agree, covenant and consent that, upon an Event of Default, and subject only to the Remedies Period, each of the Debtor and Guarantor agree to sell the shares of Banco Popular that are held as Collateral under Pre-Petition Loan Documents and that the proceeds of such sale shall be applied, in full, against the obligations due under the Pre-Petition Loan Documents (the "Recoupment").

(j) Stipulation as to Loan Documents. Each of the Debtor and Guarantor hereby consents: (i) to the transaction contemplated herein and acknowledges, reaffirms, and ratifies all security interests granted and liens constituted pursuant to the Pre-Petition Loan Documents as security for the payment and performance of all of Debtor's obligations under the Pre-Petition Loan Documents and their first priority rank; and (ii) ratifies each of the Financing Agreements (as defined in the Motion) and other Pre-Petition Loan Documents.

(k) Stipulation as to Obligations and Release. Each of the Debtor and the Guarantor acknowledges, represents, covenants, and agrees with Banco Popular that (i) Debtor's and Guarantor obligation to pay in full the outstanding balance of principal of the Loans (as defined in the Motion) and any other sums due to Banco Popular including, without limitation, accrued interest under the Financing Agreements (as defined in the Motion) and any other Pre-Petition Loan Document, is valid, binding and enforceable in all respects; (ii) Debtor's and Guarantor's obligations under the Financing Agreements and any other Pre-Petition Loan Document, in the Motion, the DIP Term Sheet, and the DIP Order are valid, binding and enforceable in all respects; and (iii) Debtor's and Guarantor's obligations to Banco Popular are absolute and unconditional, and there exists no right of setoff or recoupment, counterclaim or defense of any nature whatsoever to payment or performance of any such obligations. Debtor's and Guarantor's obligations to Banco Popular are not subject to any defenses, either in law or in equity, or otherwise, including without limitation, any offsets, claims or counterclaims against Banco Popular and any and all such defenses, offsets and claims are hereby expressly and forever waived and released. Each of the Debtor and Guarantor further acknowledges and affirms that Banco Popular has faithfully, and in good faith, performed and discharged all of Banco Popular's obligations under the Financing Agreements and any other Pre-Petition Loan Document.

(l) Continuing Obligation. Debtor's obligation to grant the Replacement Liens, the Adequate Protection Payments, and the Super-Priority Claim and its representations, covenants and obligations under the DIP Term Sheet shall: (i) continue in full force and effect until all of Debtor's obligations under the Pre-Petition Loan Documents have been satisfied in full; and (ii) be binding upon any successor to Debtor including, but not limited to, any Chapter 11 trustee or any trustee appointed in any Chapter 7 case of Debtor in the event of a conversion.

| | |
|---|---|
| | (m) No Novation. It is hereby understood and agreed by each of the parties hereto that this agreement is not intended to constitute an extinctive novation ("novación extintiva") of the obligations and undertakings of the parties under any of the Pre-Petition Loan Documents, as amended to date. Each of the Debtor and Guarantor hereby ratifies, reaffirms, confirms, consents to and acknowledges all the terms, priority and conditions of, security interest, mortgages or liens over the Collateral provided for in the Pre-Petition Loan Documents and Debtor's obligations under such documents. |
| **20. Carve-Out** | The Postpetition Lender's and the Prepetition Lender's rights to the superpriority claims and the collateral (and proceeds thereof) that is subject to the DIP Liens, the Adequate Protection Liens and the Prepetition Loan Agreement Liens shall be subject in all respects to a carve-out in an amount that shall not exceed $350,000.00 (the "Carve-Out") to be used solely to satisfy: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code; and (ii) subject to the Limitations, all unpaid (and allowed and approved by the Court) professional fees, expenses and disbursements of any professionals retained by Debtor (the "Case Professionals").<br><br>Neither the Postpetition Lender nor the Prepetition Lender shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Bankruptcy Case under any chapter of the Bankruptcy Code, and nothing in the DIP Term Sheet or otherwise shall be construed to obligate the Postpetition Lender or the Prepetition Lender, in any way, to pay compensation to or to reimburse expenses of any professional, or to guarantee that the DIP Borrower have sufficient funds to pay such compensation or reimbursement, it being understood that the rights of the Prepetition Lender and the Postpetition Lender to the proceeds of their Collateral shall be subject to the Carve-Out. |
| **21. Milestone Schedule/Sale Process** | The milestone schedule with which the DIP Borrower shall comply with respect to the plan of reorganization for the DIP Borrower (the "Plan"), which shall be satisfactory and agreeable to the DIP Borrower, the Postpetition Lender, and the Prepetition Lender (the "Milestone Schedule"), for the purpose of ensuring the timely pursuit and consummation of the confirmation of the Plan, shall be as follows: (i) within one hundred and twenty (120) days following the Commencement Date, the Debtor shall have filed a proposed Plan acceptable to Banco Popular and a corresponding disclosure statement (a "Disclosure Statement") with the Court; (ii) within one hundred fifty days (150) days following the Commencement Date, the Court shall have approved the Disclosure Statement with respect to a proposed Plan acceptable to the Prepetition Lender and the Postpetition Lender; and (iii) within one hundred and eighty (180) days of the Commencement Date, the Court shall have confirmed the Plan.<br><br>The failure of the DIP Borrower to timely satisfy the milestone set forth above, |

| | |
|---|---|
| | or the failure to obtain the approval of the Postpetition Lender and the Prepetition Lender for any such of their approvals required under the Milestone Schedule, shall constitute an Event of Default (as defined below) under the DIP Facility, and shall cause the automatic termination of the DIP Borrower' authorization to use Cash Collateral; provided, that no Event of Default under the DIP Facility and no termination of the DIP Borrower's authorization to use Cash Collateral shall occur if the failure to satisfy any milestone in the Milestone Schedule is due solely to unreasonable delay caused by the Postpetition Lender or the Prepetition Lender or the Court's schedule of hearing dates. |
| **22. Events of Default under DIP Facility** | The occurrence or existence of any of the events set forth in Exhibit A hereto shall constitute an event of default under the DIP Term Sheet (each, an "Event of Default" and collectively, "Events of Default"). |
| | At any time an Event of Default exists or has occurred and is continuing, the Postpetition Lender shall have all rights and remedies provided in the DIP Documents, the DIP Order, the Uniform Commercial Code (the Commercial Transactions Act) and other applicable law, all of which rights and remedies may be exercised, subject to the Remedies Notice Period (as defined in Exhibit B), without notice to or consent by the DIP Borrower or the Guarantor. Without limitation of the foregoing, at any time an Event of Default exists or has occurred and is continuing, unless such Event of Default has been waived in writing by the Postpetition Lender, (i) the commitment of the Postpetition Lender to provide DIP Loans under the DIP Facility shall automatically terminate (unless such termination has been waived by the Postpetition Lender in writing), (ii) the due date for payment of all DIP Obligations shall be automatically accelerated, (iii) interest on the DIP Obligations shall automatically accrue at the Default Rate, and (iv) subject to the Remedies Notice Period, the Postpetition Lender may (w) enter upon any premises on or in which any of the Collateral may be located and take possession of the Collateral or complete processing, manufacturing and repair of all or any portion of the Collateral, (x) collect, foreclose, receive, appropriate, setoff and realize upon any and all Collateral, (y) remove any Collateral from any premises on or in which the same may be located for the purpose of effecting the sale, foreclosure or other disposition thereof or for any other purpose, and (z) take whatever other action Postpetition Lender may deem necessary or desirable for the protection of its interests. All rights, remedies and powers granted to the Postpetition Lender under the DIP Documents or the DIP Order, as applicable, are cumulative, not exclusive and enforceable, in the Postpetition Lender's discretion, alternatively, successively, or concurrently. |
| **23. Conditions to Funding** | The agreement of the Postpetition Lender to make any DIP Loan requested to be made by it on any date (including the initial extension of credit) will be subject to satisfaction of the following conditions precedent: (i) the delivery of a Borrowing Request in compliance with Section 10 of the DIP Term Sheet, (ii) the accuracy of all representations and warranties contained in the DIP Documents in all material respects (except that such materiality qualifier shall |

| | |
|---|---|
| | not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) on and as of such date as if made on and as of such date, and after giving effect to the DIP Loans to be made on such date except to the extent that such representations and warranties specifically relate solely to an earlier date thereto, in which case such representation and warranty shall be true and correct as of such earlier date, (iii) the absence of any continuing Event of Default or any Default (as defined below) under the DIP Documents, the DIP Order, (iv) the DIP Order shall have been entered, shall be in full force and effect, shall not have been reversed, modified (except for modifications that are acceptable to the Postpetition Lender in its discretion and the DIP Borrower), amended (except for amendments that are acceptable to the Postpetition Lender in its discretion and the DIP Borrower), stayed or vacated and shall be in form and substance satisfactory and agreeable to the Postpetition Lender and the DIP Borrower, and shall provide for, without limitation, that upon entry of the DIP Order the Prepetition Lender and the Postpetition Lender shall not be subject to or liable for any Section 506(c) Claims, (v) all fees and expenses of the Postpetition Lender then due and payable under the DIP Budget shall have been paid, subject to the DIP Budget, (vi) the compliance with the Milestone Schedule, and (v) any motions seeking approval of the DIP Facility (and related use of Cash Collateral and grants of adequate protection), the DIP Order and any other motions and orders respecting the DIP Facility, use of Cash Collateral and adequate protection shall have been in form and substance satisfactory and agreeable to the Postpetition Lender and the DIP Borrower. |
| **24. Representations and Warranties** | The DIP Borrower and the Guarantor hereby represent and warrant to the Postpetition Lender the following (which shall survive the execution and delivery of the DIP Term Sheet and the other DIP Documents), the truth and accuracy of which shall be a continuing condition of the making of DIP Loans by the Postpetition Lender:<br><br>(a) The DIP Borrower and the Guarantor, each, is duly organized and validly existing under the laws of the Commonwealth of Puerto Rico.<br><br>(b) The DIP Borrower and the Guarantor, each, is duly authorized and empowered to enter into, execute, deliver and perform the DIP Documents to which it is a party. The execution, delivery and performance of the DIP Documents have been duly authorized by all necessary actions and are not in contravention of law or the terms of the DIP Borrower's and Guarantor's certificate of incorporation, by-laws, or other organizational documentation, or any indenture, agreement or undertaking to which any of the DIP Borrower and/or the Guarantor is a party or by which the DIP Borrower or the Guarantor or their respective property is bound.<br><br>(c) Each of the DIP Facility and the DIP Documents is a legal, valid and binding obligation of the DIP Borrower and the Guarantor signatories thereto, enforceable against each of them in accordance with the terms of such documentation, except as may be limited by law. |

| | |
|---|---|
| | (d)    All DIP Loans provided by the Postpetition Lender shall be used by the DIP Borrower solely for the purposes set forth in clauses (i) through (vii) of Section 12 of the DIP Term Sheet, in each case subject to the Limitations. No portion of the DIP Loans shall be used for any purpose included in the Limitations. |
| | (e)    All information furnished by or on behalf of the DIP Borrower or the Guarantor in writing to the Postpetition Lender or any of their respective advisors in connection with the DIP Term Sheet or any of the other DIP Documents or any transaction contemplated hereby or thereby, to the best knowledge of the DIP Borrower and the Guarantor, is true and correct in all material respects on the date as of which such information is dated or certified and does not omit any material fact necessary in order to make such information not misleading. No event or circumstance has occurred which has had or could reasonably be expected to have a material adverse effect on the business, assets or condition (financial or otherwise) of the DIP Borrower or the Guarantor which has not been fully and accurately disclosed to the Postpetition Lender in writing. |
| **25.  Affirmative Covenants** | The DIP Borrower shall: (a) deliver to the Postpetition Lender (i) certifications upon submission of each Borrowing Request with respect to compliance with the DIP Budget and any other information reasonably requested by the Postpetition Lender, (ii) the Variance Report no later than the fifteenth (15th) calendar day after the close of each month, (iii) as soon as possible and in any event within three (3) business days after an officer of the DIP Borrower obtains actual knowledge, or after due inquiry, would have obtained such knowledge by acting in good faith and in a prudent manner in the performance of his or her duties, of the occurrence of any condition, occurrence or event which, after notice or lapse of time or both, would constitute an Event of Default (a "Default"), a statement of an officer of the DIP Borrower setting forth details of such Default and the action which the DIP Borrower has taken and proposes to take with respect thereto, and (iv) as soon as possible and in any event within three (3) business days after an officer of the DIP Borrower obtains actual knowledge, or after due inquiry, would have obtained such knowledge by acting in good faith and in a prudent manner in the performance of his or her duties, of the occurrence of any material adverse development with respect to any loss, damage, investigation, claim, litigation, action, proceeding or controversy involving the DIP Borrower, give notice thereof and as soon as practicable thereafter, to the extent the Postpetition Lender requests, copies of all documentation relating thereto; (b) permit the Postpetition Lender and its representatives and designees to visit and inspect the properties, books and records of the DIP Borrower upon reasonable notice at the DIP Borrower's expense; (c) furnish or cause to be furnished to the Postpetition Lender such budgets and other information respecting the Collateral, the sale or disposition of the DIP Borrower's assets, and any draft or proposed plan of reorganization or liquidation (or plan term sheet) of or for the DIP Borrower as the |

| | |
|---|---|
| | Postpetition Lender, from time to time, may request; (d) preserve and keep in full force and effect the DIP Borrower's organizational existence and all rights and franchises with respect thereto and all licenses, trademarks, tradenames, approvals, authorizations, leases, contracts, permits and privileges material to the business or assets of the DIP Borrower, as and to the extent in effect as of the Commencement Date, (e) subject to the DIP Budget, pay all taxes, assessments, contributions and other governmental charges imposed upon the DIP Borrower or any of its properties or assets as they become due and payable, to the extent payment and/or enforcement thereof is not stayed as a result of the Bankruptcy Case, (f) maintain in good working order all material properties used in the business of the DIP Borrower, as and to the extent in good working order as of the Commencement Date, (g) maintain insurance with respect to the business and properties of the DIP Borrower against loss of the kind and in the amounts maintained by the DIP Borrower as of the Commencement Date, (h) deliver to the Postpetition Lender copies of any and all insurance claims (including past, pending or future claims), whether or not funded, and of all non-privileged documents and correspondence related to such insurance claims and any claims that the DIP Borrower is contemplating, and provide the Postpetition Lender with thirty (30) days' advance notice of all non-renewal/cancellation/amendment riders in respect of such policies, (i) comply in all material respects with the requirements of all applicable laws, (j) promptly upon request execute and deliver such documents and do such other acts as the Postpetition Lender may reasonably request in connection with the DIP Facility, and in accordance with the DIP Documents (including but not limited to execution of any additional security documents that may be required by the Postpetition Lender to secure the DIP Liens), (k) maintain compliance with the DIP Budget in accordance with Section 13 and all other provisions of the DIP Term Sheet, and (l) perform all obligations of the DIP Borrower under the DIP Facility, the DIP Documents and DIP Order, as applicable. |
| **26. Negative Covenants** | The DIP Borrower shall not: (a) except to the extent existing as of the DIP Closing Date, incur any indebtedness (other than the borrowings under the DIP Facility and obligations permitted to be incurred under the DIP Budget, any other indebtedness permitted to be incurred by the Postpetition Lender and the Court, and any unsecured obligations incurred in the ordinary course of business by the DIP Borrower and permitted to be incurred by the DIP Budget), (b) except to the extent existing as of the DIP Closing Date, incur any liens other than liens permitted in writing by the Postpetition Lender, (c) except to the extent existing as of the DIP Closing Date, make any investments in any person or make any loan to any person (other than as permitted in writing by the Postpetition Lender), (d) make any dividend or distribution or redeem or repurchase its equity interests, (e) without the written consent of the Postpetition Lender, (i) enter into any merger, consolidation or reorganization, or (ii) liquidate, wind up or dissolve, (f) engage in any asset sales or dispositions except with the written consent of Postpetition Lender, (g) engage in any business other than the businesses engaged in by the DIP Borrower on |

| | |
|---|---|
| | the DIP Closing Date except with the written consent of the Postpetition Lender, (h) terminate or agree to any modification to any organizational documents of the DIP Borrower except with the written consent of the Postpetition Lender, (i) make any payment of prepetition claims or payment of postpetition items except in accordance with the DIP Budget, (j) other than the Carve-Out as permitted by Section 20 of the DIP Term Sheet, consent to the granting of adequate protection payments or liens, superpriority administrative expense claims or liens having priority senior or pari passu with the liens granted to the Postpetition Lender or the Prepetition Lender, except as permitted by the DIP Documents, or (k) enter into any agreement outside of the ordinary course of the DIP Borrower's business providing for or related to the management of the DIP Borrower's business and/or properties other than any such agreement expressly consented to in writing by the Postpetition Lender. |
| **27. Other Bankruptcy Matters** | Among other things upon entry of the DIP Order approving this DIP Term Sheet and the Motion, (a) the Postpetition Lender and all of its respective counsel, advisors, and consultants shall be entitled to the benefit of a "good faith" finding pursuant to section 364(e) of the Bankruptcy Code, (b) the Postpetition Lender and the Prepetition Lender each reserves and shall have the right to credit bid (pursuant to section 363(k) of the Bankruptcy Code and/or pursuant to or under the terms of any consensual or nonconsensual (including under section 1129(b)(2)(A)(i), (ii) and/or (iii) of the Bankruptcy Code) chapter 11 plan of reorganization or liquidation of or for the DIP Borrower, whether proposed by the DIP Borrower or any other party, by motion under section 363 of the Bankruptcy Code, or otherwise under applicable law) the DIP Loans or the indebtedness owed to the Prepetition Lender under the Prepetition Loan Agreement (as applicable), in whole or in part, in connection with any sale or disposition of assets in the Bankruptcy Case and the DIP Borrower hereby waives any and all rights to oppose such credit bid rights of the Prepetition Lender and the Postpetition Lender, (c) upon entry of the DIP Order, neither the Prepetition Lender nor the Postpetition Lender shall be subject to or liable for any Section 506(c) Claims, and the assertion of any such claims against the Prepetition Lender and/or the Postpetition Lender shall be prohibited by the entry of the DIP Order, and (d) neither the Postpetition Lender nor the Prepetition Lender shall be subject to (I) the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, or (II) an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Postpetition Lender or the Prepetition Lender, and (ii) upon entry of the DIP Order, the DIP Borrower shall be authorized to open and utilize the DIP Facility Account. |
| **28. Note** | The DIP Borrower's obligation to pay the principal of, and interest on, the DIP Loans made by the Postpetition Lender shall be evidenced by one promissory note duly executed and delivered by the DIP Borrower substantially in the form of <u>Annex A</u> (the "Note"). |
| | No failure of the Postpetition Lender to request or obtain a Note evidencing the |

| | |
|---|---|
| | DIP Loans to the DIP Borrower shall affect or in any manner impair the obligations of the DIP Borrower with respect to the DIP Facility which would otherwise be evidenced by a Note in accordance with the requirements of the DIP Documents, and shall not in any way affect the security for the DIP Facility provided pursuant to any other DIP Document.

The issuance and delivery to the Postpetition Lender of the Note as requested by the Postpetition Lender shall be a condition precedent to the making of any DIP Loans under the DIP Facility. |
| **29. Cost and Yield Protection** | If after the DIP Closing Date, either (i) any change in, or in the interpretation of, any law or regulation is introduced, including, without limitation, with respect to reserve requirements, applicable to the Postpetition Lender or any banking or financial institution from whom the Postpetition Lender borrows funds or obtains credit (a "Funding Bank"), or (ii) a Funding Bank or the Postpetition Lender complies with any regulation, guideline or request from any central bank or other governmental authority or (iii) a Funding Bank or the Postpetition Lender determines that the adoption of any applicable law, rule or regulation regarding capital adequacy, or any change therein, or any change in the interpretation or administration thereof by any governmental authority, central bank or comparable agency charged with the interpretation or administration thereof has or would have the effect described below, or a Funding Bank or the Postpetition Lender complies with any request or directive regarding capital adequacy (whether or not having the force of law) of any such authority, central bank or comparable agency, and in the case of any event set forth in this clause (iii), such adoption, change or compliance has or would have the direct or indirect effect of reducing the rate of return on the Postpetition Lender's capital as a consequence of its obligations hereunder to a level below that which the Postpetition Lender could have achieved but for such adoption, change or compliance (taking into consideration the Funding Bank's or the Postpetition Lender's policies with respect to capital adequacy) by an amount deemed by the Postpetition Lender to be material, and the result of any of the foregoing events described in clauses (i), (ii) or (iii) is or results in an increase in the cost to the Postpetition Lender of funding or maintaining the DIP Loans or the DIP Facility, then the DIP Borrower shall from time to time upon demand by the Postpetition Lender pay to the Postpetition Lender additional amounts sufficient to indemnify the Postpetition Lender against such increased cost on an after-tax basis (after taking into account applicable deductions and credits in respect of the amount indemnified). A certificate as to the amount of such increased cost shall be submitted to the DIP Borrower by the Postpetition Lender and shall be conclusive absent manifest error. |
| **30. Expenses and Indemnification** | The DIP Borrower and the Guarantor shall, jointly and severally ("solidariamente") with each other, indemnify the Postpetition Lender, its affiliates, successors and assigns, and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each, an "Indemnified Person") and hold them harmless from and against any and all |

| | |
|---|---|
| | liabilities, obligations, losses, damages, claims, costs, expenses and disbursements (including reasonable fees and disbursements of counsel and financial advisors, and any funding of or payment of Carve-Out Amounts) of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by DIP Borrower, the Guarantor or any of their respective affiliates) that relates to the DIP Documents, the DIP Order, the transactions contemplated by the DIP Facility, the use or proposed use of proceeds of the DIP Loans, or any enforcements of the DIP Documents; _provided, that_ no Indemnified Person will be indemnified for any liability, obligation, loss, damage, claim, cost, expense, or disbursement to the extent determined in the final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from its gross negligence or willful misconduct. In addition, all out-of-pocket costs and expenses (including, without limitation, fees, disbursements and other charges of counsel) of the Postpetition Lender for enforcement costs and documentary taxes associated with the DIP Facility shall be paid by the DIP Borrower. |
| **31. Governing Law and Jurisdiction** | The DIP Borrower and the Guarantor shall submit to the exclusive jurisdiction of the Court and shall waive any right to a trial by jury with respect to any proceeding related to the DIP Facility. Except to the extent governed by the Bankruptcy Code, the DIP Documents shall be governed by the laws of the Commonwealth of Puerto Rico. |

**AGREED AND ACCEPTED, as of the date first written above:**

Dated: _____ ___, 2010

HOSPITAL DAMAS, INC., a Puerto Rico corporation

By: _____
Name:
Title:

FUNDACION DAMAS, INC. a Puerto Rico corporation

By: _____
Name:
Title:

BANCO POPULAR DE PUERTO RICO

By: _____
Name:
Title:

Affidavit Number: _____

       Acknowledged and subscribed to before me by _____, of legal age, , executive and resident of _____, Puerto Rico, in his capacity as _____ of Hospital Damas, Inc., by _____, of legal age, , executive and resident of _____, Puerto Rico, in his capacity as _____ of Fundación Damas, Inc., and _____, of legal age, married, executive and resident of San Juan, Puerto Rico, in _____ as _____ of Banco Popular de Puerto Rico, all personally known to me at San Juan, Puerto Rico, this ___ day of _____, 2010.

 

                              _____
                              NOTARY PUBLIC

# EXHIBIT A

## Summary of Additional Events of Default

a) The DIP Order shall not have been entered by the Court, and the Amendment shall not have been executed and delivered by Debtor and the Prepetition Lender and the Postpetition Lender (which shall be referred to interchangeably in this Exhibit A as "Banco Popular"), within sixty (60) days after the Commencement Date; or

b) Debtor shall fail to pay any of the obligations under the DIP Facility on the due date thereof; or

c) Any representation, warranty or other written statement to Banco Popular by Debtor or by an authorized representative on behalf of Debtor proves to have been false or misleading in any material respect when made; or

d) Debtor shall breach any covenant or obligation contained in the DIP Term Sheet (subject to any applicable grace periods set forth in the DIP Term Sheet including Exhibit A thereto, if any) or fail to comply with or fail to perform any of the terms, conditions or covenants or its obligations set forth in the DIP Order; or

e) The occurrence of any condition or event which permits Banco Popular to exercise any of the remedies set forth in the DIP Order, including any "Event of Default" (as defined in the DIP Order); or

f) The occurrence of any event since the Petition Date that has or would reasonably be expected to have a material adverse effect on (a) Debtor's condition (financial or otherwise), businesses, operations or property of Debtor, (b) the ability of Debtor to fully and timely perform its obligations under the DIP Documents, the DIP Order, or (c) the legality, validity, binding effect or enforceability of any of the DIP Documents or the rights and remedies of Banco Popular under any of the DIP Documents, the DIP Order; provided, that (i) the filing of the Bankruptcy Case and (ii) any events of default occurring under the Prepetition Loan Agreement shall not be taken into consideration (a "Material Adverse Change"); or

g) Prior to consummation of a Plan, the ownership of Debtor shall change from that existing as of the Petition Date; or

h) Debtor or any of its affiliates shall challenge in any action the validity or enforceability of any of the DIP Documents or the Prepetition Loan Documents, the enforceability of the obligations thereunder, or the perfection or priority of any lien granted to Banco Popular or any of the DIP Documents or Prepetition Loan Documents ceases to be in full force or effect; or

i) Debtor or an officer of Debtor shall be convicted under any criminal law that could reasonably be expected to result in a forfeiture of Debtor's property; or

j)        A trustee or an examiner with enlarged powers relating to the operation of Debtor's business (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code), shall be appointed in the Bankruptcy Case; or

k)        Any lien on any of the DIP Collateral or Collateral or super-priority claim which is *pari passu* with or senior to the DIP Liens or Superpriority DIP Claims of Banco Popular shall be granted (other than the Carve-Out) or Debtor shall file a motion seeking approval of any such lien or super-priority claim; or

l)        Other than payments authorized by the Court in respect of one or more "first day" or other orders reasonably satisfactory to Banco Popular and Debtor, Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness or payables; or

m)        The Court shall enter an order granting relief from the automatic stay (i) to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any of Debtor's assets which have an aggregate value in excess of $50,000.00, or (ii) to permit other actions that would reasonably be expected to result in a Material Adverse Change; or

n)        Any material provision of any DIP Documents shall cease to be valid or binding on Debtor, or Debtor shall so assert in any pleading filed in any court; or

o)        Any order shall be entered reversing, amending, supplementing, staying for a period in excess of thirty (30) days, vacating or otherwise modifying in any material respect the DIP Order without the prior written consent of Banco Popular (and no such consent shall be implied from any other authorization by Banco Popular); or

p)        The DIP Borrower shall effect a material change in its executive management (other than any changes agreed to in writing by Banco Popular), unless such default is cured to the reasonable satisfaction of Banco Popular within thirty (30) business days following such material change; or

q)        A plan shall be confirmed in the Bankruptcy Case that does not provide for the termination of the commitments under the DIP Facility and the indefeasible payment in full in cash of the DIP Obligations on the effective date of such plan in a manner acceptable to Banco Popular; or

r)        The (a) filing by Debtor of any plan of reorganization or liquidation without the prior written approval of Banco Popular, or (b) the termination of any of Debtor's exclusive rights under section 1121 of the Bankruptcy Code; or

s)        (i) On a cumulative basis, Debtor's actual cash disbursements shall vary from the DIP Budget in excess of the Permitted Variance, which cumulative variance shall be measured on a weekly basis and subject to a five (5) business day grace period, or (ii) Debtor shall fail to deliver the DIP Budget, any Variance Report or any related reports or certificate with respect to the DIP Budget, in form and substance satisfactory to the Post-petition Lender, within two (2) business days of the date when due; or

t)      Failure of Debtor to meet any of the milestones in the Milestone Schedule; or

u)      The filing of any motion to approve a sale of all or a substantial portion of Debtor's assets without the prior written approval of Banco Popular; or

v)      Debtor seeking, or the filing of any motion by any other party to obtain, additional or replacement post-petition financing for Debtor; or

w)      Debtor's failure to comply with any of its adequate protection obligations to Banco Popular under the DIP Order; or

x)      The Bankruptcy Case shall be dismissed or converted into a chapter 7 case; or

y)      The value of the Cash Collateral diminishes on any month by more than ten (10) percent in value from the representations contained in the DIP Budget.

z)      The commencement or continuation of any judicial action or proceeding in law or equity, by or with the support of Debtor, against Banco Popular.

EXHIBIT B

Summary of Additional Conditions to Closing

The closing of the DIP Facility and the making of the initial DIP Loan shall be subject to the following additional conditions precedent:

1.  DIP Order.  The DIP Order shall authorize each and every provision in the DIP Term Sheet and Motion, including, without limitation, those provisions (a) modifying the automatic stay to permit the creation and perfection of the Postpetition Lender's liens on the Collateral, (b) providing for the automatic termination of such stay otherwise applicable to the Postpetition Lender with respect to the Collateral (but solely with respect to the DIP Facility) and the Recoupment after ten (10) business days' prior written notice of an Event of Default (such ten (10) business day period, the "Remedies Notice Period") (provided  that the automatic stay shall remain in full force and effect during the Remedies Notice Period unless the Court shall have determined that an Event of Default has occurred and is continuing), which written notice shall be provided by the Postpetition Lender to the DIP Borrower, counsel to the DIP Borrower, and the Office of the United States Trustee for the District of Delaware, and which written notice shall be filed with the Court, to permit the enforcement of the Postpetition Lender's remedies under the DIP Facility, including, without limitation, the enforcement of such remedies against the Collateral, requiring the DIP Borrower's commercially reasonable efforts (subject to applicable law) to sell the Collateral and effect the Recoupment if requested by the Postpetition Lender and directing that the Postpetition Lender and its representatives be granted access to all locations of the Collateral during the continuance of an Event of Default in support of the enforcement and exercise of such remedies; provided, that, such stay shall not be automatically terminated as provided above if, during the Remedies Notice Period, the Court has determined that an Event of Default has not occurred and/or is not continuing, (c) providing that (i) during the Remedies Notice Period, the DIP Borrower shall be entitled to an emergency hearing before the Court solely for the purpose of contesting whether an Event of Default has occurred and/or is continuing and (ii) upon expiration of the Remedies Notice Period, unless ordered otherwise by the Court, the automatic stay as to the Postpetition Lender shall terminate (but solely with respect to the DIP Facility), (d)  prohibiting the assertion of claims arising under section 506(c) of the Bankruptcy Code against the Prepetition Lender and the Postpetition Lender and, except as expressly permitted therein, the commencement of other actions adverse to the Postpetition Lender or its rights and remedies under the DIP Facility, the DIP Order, or any other order, shall be prohibited, (e) prohibiting the incurrence of debt by the DIP Borrower (other than debt incurred in compliance with the DIP Budget) without the written consent of the Postpetition Lender, (f) prohibiting any granting or imposition of liens without the written consent of the Postpetition Lender, (g) approving the DIP Borrower's stipulation to the validity, extent, amount, perfection, priority, and non-avoidability of the prepetition claims and liens granted under or in connection with the Prepetition Loan Agreement, (h) authorizing and approving the DIP Facility, the DIP Term Sheet and the transactions contemplated thereby, including, without limitation, the granting of the superpriority status, security interests and liens, and the payment of all fees and expenses, referred to herein, (i) to the

extent of the obligations under the DIP Facility, naming the Postpetition Lender as loss payee (in respect of property/casualty insurance and any other type of insurance policies maintained by the DIP Borrower) and additional insured (in respect of liability insurance policies maintained by the DIP Borrower), and requiring the DIP Borrower to provide the Postpetition Lender with thirty (30) days' advance notice of all non-renewal/cancellation/amendment riders in respect of such policies, (j) providing that the Postpetition Lender and the Prepetition Lender are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply, and (k) providing for releases by the DIP Borrower of the Postpetition Lender and the Prepetition Lender effective upon entry of the DIP Order.

2.      <u>Customary Closing Documents</u>.  Organization documents, organizational resolutions and evidence of authority from the DIP Borrower and the Guarantor to execute the DIP Documents, customary officers' closing certificates and all information and documentation required by regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations, including without limitation the PATRIOT ACTS, if applicable, shall have been delivered and reviewed to the satisfaction of the Postpetition Lender.

3.      <u>DIP Documents</u>.  The Note shall have been prepared by counsel to the Postpetition Lender and shall be in form and substance satisfactory and agreeable to the Postpetition Lender and the DIP Borrower.  The DIP Term Sheet and the Note shall have been executed and delivered to the Postpetition Lender by the DIP Borrower.

4.      <u>No Default</u>.  No Default or Event of Default shall exist at the time of, or after giving effect to, the making of the DIP Loans with respect to the DIP Loans made on the DIP Closing Date.

5.      <u>Margin Regulations</u>.  All DIP Loans made by the Postpetition Lender to the DIP Borrower shall be in compliance with the Federal Reserve's Margin Regulations.

6.      <u>Additional Documents</u>.  There shall have been delivered to the Postpetition Lender such additional instruments and documents as the Postpetition Lender or counsel to the Postpetition Lender shall reasonably require.

<u>ANNEX A</u>

DIP Budget

Note