```
                IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF PUERTO RICO

IN RE:                                :
                                      :
HOSPITAL DAMAS                        : CASE NO. 10-8844 (MCF)
Debtor                                :
                                      : CHAPTER 11
                                      :
_____:
```

**URGENT MOTION**
**TO LIFT AUTOMATIC STAY FOR JURY TRIAL SCHEDULED IN 20 DAYS**
**BEFORE THE U.S.DISTRICT COURT FOR PUERTO RICO**

To the Honorable Court:

Olga Maldonado and her son Josued Narvaez Maldonado represented by attorney Rafael E. García Rodón (collectively, "Movants"), hereby move, pursuant to 11 U.S.C. §362(d)(1), for an order lifting the automatic stay for the limited purpose of allowing the United States District Court of Puerto Rico to hear the jury trial scheduled for October 20, 2010, at 10:00 AM, thereby liquidating the medical malpractice claim of the Movants. In support of this motion, Movants state as follows:

**I.   BACKGROUND**

1. On or about March 11, 2009, Movants filed a suit against codefendants Hospital Damas, Dr. Jorge Guzman Villalonga and his Conjugal Partnership, and Dr. Jesus Monasterio and his Conjugal Partnership, in the United States District Court for the District of Puerto Rico, Civil Action No. 09-1240 (CCC), before

1

the Honorable Judge Carmen Consuelo Cerezo alleging medical malpractice that arise under the laws of the Commonwealth of Puerto Rico, Articles 1802 and 1803 of the Civil Code of Puerto Rico and the jurisprudence of the Supreme Court of Puerto Rico in Pérez v. Hospital La Concepción, 115 D.P.R. 721 (1984); Núñez v. Cintrón, 115 D.P.R. 598 (1985); Márquez v. Martínez Rosado, JTS 41 (1985); Sharon Riley v. Rodríguez, 119 D.P.R. 762 (1987); and Oliveros v. Abreu, 101 D.P.R. 209 (1973), Blas Toledo v. Hospital Nuestra Senora de la Guadalupe, 98 JTS 101, Hernandez v. La Capital, 81 D.P.R. 1031 (1960). Sagardía De Jesús v. Hospital Auxilio Mutuo, 2009 TSPR 173. US Fire Insurance Company v. AEE, 2008 TSPR 160.

    2. Mr. Ferdinand Narvaez, a victim of gross medical malpractice, husband and father of the plaintiffs, died of inguinal hernia at the Hospital Damas, something that should not happen at this age and time. At the time of his death, Mr. Narvaez was fully productive and generating a yearly income of $60,000.00. His widow and minor son, have suffered and are still suffering a financial catastrophe. She has to clean rooms at $3.00 per room in Florida to support herself and her minor son, and she needs money for her son's education. This state of affairs needs to cease and as such, the remedy is the jury trial scheduled before the Honorable Judge Carmen Consuelo Cerezo in

the US District Court of Puerto Rico, and set for October 20, 2010, just twenty days away.

3. On September 2, 2010, the District Court ordered the parties to negotiate a settlement agreement and scheduled a Final Settlement Conference Hearing for September 22, 2010 at 5:00 P.M. Finally, the District Court scheduled a jury trial for October 20, 2010 at 10:00 A.M.

## II. **Jurisdiction**

5. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(G).

6. Venue is proper in this Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The relief requested in this Motion is predicated on 11 U.S.C. § 362(d), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

## III. **Discussion**

8. By this Motion, the Movants seek to lift the automatic stay to resolve the issues that were before the District Court. Relief From the Automatic Stay is Warranted Under 11 U.S.C. § 362(d)(1). Section 362(d)(1) of the Bankruptcy Code provides that:

> (d) On request of a party in interest after notice and a hearing, the court shall grant relief from the stay provided under

>subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -
>(1) *for cause*, including the lack of adequate protection of an interest in property of such party in interest;...

11 U.S.C. § 362(d) (emphasis added). Under the application of section 362(d)(1), relief from the automatic stay with respect to the Movants is warranted for "cause."

Courts have often permitted, as should be in this case, "litigation to be concluded in another forum, particularly if the non-bankruptcy suit involves multiple parties or is ready for trial." Lawrence P. King, COLLIER ON BANKRUPTCY (15th ed. 2006) at 362.07[3][a]; *In re Rexene Prods. Co.*, 141 B.R. 574, 575 (Bankr. D. Del. 1992) ("...the fact that [the non-bankruptcy judge] has already heard and decided two issues support[s] the granting of relief on the grounds of judicial economy.") (hereinafter, "Rexene"); In re Sonnax Indus., Inc. v. Tri Component Prods. Corp., 907 F.2d 1280 (2d Cir. 1990) (hereinafter, "Sonnax"); In re Castlerock Properties, 781 F.2d 159 (9th Cir. 1986); In re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984).

Moreover, the legislative history of section 362(d)(1) emphasizes that a single factor, such as allowing a proceeding to advance before another court, can constitute the requisite "cause." "It will often be more appropriate to permit

4

proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977) (cited in Rexene at 576).

In the recent case of In re Project Orange Assocs., LLC, 432 B.R. 89 (Bankr. D.N.Y. 2010), the court uses the The Sonnax Analysis, in determining whether "cause" exists to lift the automatic stay under section 362(d) to permit litigation to proceed in another forum, some courts in the Second Circuit look to twelve factors. *E.g., Sonnax*, 907 F.2d at 1286. These factors are:

> (1) whether the relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other

> proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditions [sic] and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceedings; and
> (12) impact of the stay on the parties and the balance of harms.

*Id*. Courts have been clear that not all of the factors will be implicated in every case. *See* Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999), In re Enron Corp., 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004). However, at least eight (8) of the twelve (12) factors in Sonnax are applicable here and plainly favor lifting the automatic stay to allow the District Court Action to conclude the case and enter judgment.

(1) The District Court Action will Result in the Complete Resolution of the Issues

If the automatic stay is lifted, the District Court will resolve all remaining issues. Thus, there will be a final determination and liquidation of any and all claims Movants may have against Hospital Damas in the District Court action. The parties have already run virtually the entire, grueling race; they should be allowed to take advantage of the only step that remains -- to cross the finish line. *See* In re Patriot Contracting Corp., 2006 Bankr. LEXIS 4133, *10 (Bankr. D. N.J. 2006) (court found that permitting the action to proceed in the

6

original forum was merited because it would result in "complete resolution of the dispute").

>(2) The District Court Action Will Not Interfere With the Bankruptcy Cases

Allowing the District Court Action to proceed will not interfere with Hospital Damas' bankruptcy cases because it already has counsel for this matter, separate and apart from bankruptcy counsel. Again, due to the timing of the bankruptcy filings, on the eve of trial, debtor's litigation counsel is fully prepared to litigate the majority of the limited remaining issues in the District Court action. Finally, the trial is expected to last no more than approximately seven days. This level of work, when compared to almost two years of prior litigation in the District Court action by litigation counsel that is otherwise unaffiliated with the bankruptcy cases simply cannot be reasonably viewed as an imposition on the debtor's bankruptcy case, the more so because these issues will have to be decided somewhere, sometime, for this Chapter 11 case to survive. For those same reasons, there is no argument that the estate would be prejudiced by having to expend additional financial resources on the District Court litigation, as lifting the stay provides the shortest and least expensive means to resolution of the issues that remain in the District Court case. *See* In re Ware Window Co., 2003 Bankr. LEXIS 885, 9 (Bankr. E.D.

7

Pa. 2003) ("In all cases addressing relief from the stay under § 362(d)(1) to allow the commencement or continuation of non-bankruptcy litigation, the overriding consideration is whether the debtor's estate or the debtor will be prejudiced if the litigation is permitted in another forum. Absent a showing of prejudice, relief has generally been granted.").

    (4) The Specialized Expertise of the Court

The specialized expertise the District Court has developed over almost two years of activity in the District Court Action weights in favor of lifting the automatic stay to allow the District Court Action to conclude before the District Court. Judge Cerezo is completely familiarized with the trial to be held in 21 days, she hears these kind of cases in a daily manner and it makes no sense to ask this Bankruptcy Court at some time in the future to take the necessary time to acquaint itself with the extensive background of the District Court Action and then to resolve the remaining disputes to the extent it otherwise would have jurisdiction to do so. *See* In re Continental Airlines, Inc., et al., 152 B.R. 420, 425 (D. Del. 1993) (in lifting the stay the court held that "the difference between filing briefs and preparing for oral argument in [the non-bankruptcy forum]...is negligible in terms of added litigation expenses and diverted attention.").

    (8) Judgment Not Subject to Equitable Subordination and

8

(9) <u>Resolution Will Not Result in Avoidable Judicial Lien</u>

Given the nature of the District Court Action, there is simply no argument that any judgment that would stem from the District Court Action could be subject to equitable subordination or result in an avoidable judicial lien. Therefore, these two factors, as delineated in <u>Sonnax</u>, weigh in favor of lifting the automatic stay and allowing the District Court Action to conclude before the District Court, as the results of the action would not be effectively reversed by the rights afforded to Hospital Damas through the bankruptcy process.

(10) <u>The Interests of Judicial Economy Favor the District Court Action</u>

In the interests of judicial economy, it would be a waste of resources to discard the time, energy and money that brought the District Court Action to the eve of trial on the issues that remain. Under these circumstances, from the perspectives of judicial economy, the parties' own resources and fairness to the parties, it makes no sense to ask this Court at some time in the future to take the necessary time to acquaint itself with the extensive background of the District Court Action and then to resolve the remaining disputes to the extent it otherwise would have jurisdiction to do so. See <u>Rexene</u> at 577 ("This Court is of the opinion that to begin this litigation anew in this

9

bankruptcy court...would certainly result in a waste of judicial resources.").

(11) <u>The Parties are Ready for Trial in the District Court Action</u>

As discussed above, lifting the stay to allow the District Court Action to conclude is merited because the litigation is at a very advanced stage. The parties had already completed pre-trial motion practice, pre-trial briefing, and were poised to begin trial the month after the debtor petition for bankruptcy relief. Given the late stage of litigation, the District Court is uniquely situated to resolve the remaining issues between the parties.

Further, lifting the stay now, as opposed to at a later juncture in the bankruptcy cases, is useful so that the parties, this Court and the debtor's creditors will not be in limbo any longer than unavoidable as to when and how there will be a resolution of the issue between the debtor and the Movants -- issues that are of importance to both the parties and the future of these Chapter 11 cases. *See* <u>Rexene</u> at 577 ("Judicial economy dictates a prompt resolution in a single forum and with the same judge who was originally assigned to the case."). Furthermore, with stay relief granted at this stage, the parties will have the necessary flexibility to capitalize on whatever

10

opportunities may arise in the District Court to resolve the remaining issues by negotiation or other appropriate means.

(12) <u>Impact of the stay on the parties and the balance of harms</u>

Given the time, expense and developed expertise of the District Court with respect to the District Court Action, to deny its completion would simply be inefficient. When balancing, on the one hand, the hypothetical harm to the estate of allowing the debtor's separate litigation counsel to conclude the remaining issues in an almost two-year litigation against, on the other hand, the harm to Movants of substantial delay and/or recommencing litigation before the Bankruptcy Court, the result is clear -- the stay should be lifted. Additionally, resolution of the remaining issues in the District Court Action is actually in the best interests of the debtor' estate.

Moreover, the Movants' expert witness, a renowned professor of surgery, is 85 years old suffering health problems, and if something was to happen to him, all the discovery that has taken place over the last two years could be lost; the Movant would have to hire a new expert witness and discovery would have to be once again opened. Thus, both the Movants and the debtor would be harmed.

**The Trust Fund is not part of the Hospital Damas' estate. Finally and in the alternative, the Movant seeks to lift the automatic stay under <u>Sonnax</u> factor number six.**

(6) <u>Whether the action primarily involves third parties</u>;

The debtor listed in Scheduled B as part of its assets a Trust Fund, it was listed as a Self Insurance Fund by Banco Popular with a balance of $1,002,498.42. This Trust Fund was created for the sole purpose of paying malpractice claims against Hospital Damas and Damas Foundation Inc. (Exhibit A, page 4, lines 23-25). As also established in the Trust Fund Agreement, Damas Foundation Inc. is the one required to deposit the amount of $1,000,000.00 to the Trust Fund, and maintain this amount available as required by the Insurance Commissioner of the Commonwealth of Puerto Rico (Exhibit A, page 11 lines 21-28). Thus, the Movants assert that the Trust Fund is not part of the Hospital Damas' estate under USC section 541(b).

Under Section 4105 of the Insurance Code, Title 26 of the Puerto Rico Laws Annotated, "Every health services professional and health care institution must show its financial solvency for the fiscal year in which it shall exercise its function." The manner in which the hospital ensures it financial solvency is by:

> (1) Establish a guarantee fund whose minimum amount in the case of a health services professional shall be, at all times, the amount

>of the aggregate limit established as provided in this section and in the case of health care institutions for the amount of one million dollars ($1,000,000). In no case may it be drawn against those amounts without the prior authorization of the Commissioner.
>
>(2) Those health care institutions that avail themselves of this option must also comply with the conditions established below and with those others the Commissioner may authorize so that two (2) or more health care institutions may establish guarantee funds in common, provided they also meet the following requirements:
>
>>(a) <u>That the guarantee fund be deposited in a trust created according to the laws of the Commonwealth of Puerto Rico.</u>
>
>>...
>
>>(e) <u>That the trust use the guarantee fund solely and exclusively for paying claims for medical-hospital professional liability and for paying expenses inherent to said claims.</u>
>
>...

Section 4105 of the Insurance Code, Title 26 of the Puerto Rico Laws Annotated. Moreover, under Trust Fund as established and stated on page 10: "[at] no time shall any part of the Fund (whether by reason of any amendment of this Agreement, or otherwise) be used for or diverted to, purposes other than to pay the malpractice claims against Hospital Damas and the SETTLOR" (Exhibit A, page 10 section 10).

The Board of Directors of the Damas Foundation Inc. is the one who controls such fund. As established in the Trust Fund Agreement,

> "The Board shall have the exclusive right to enforce any and all provisions of the Trust, and in any action or proceeding affecting the Trust, the Settlor [Damas Foundation Inc.], the Board [Board of Damas Foundation Inc.] and the Trustee, shall be the only necessary or proper parties and the only parties entitled to any notice or process."

(Exhibit A, page 5 lines 11-16). Hospital Damas cannot claim that the Trust Fund is part of the estate because it is not controlled by the Hospital Damas, it is controlled by the Board of Damas Foundation Inc. which has not filed for bankruptcy. In the case of In re Brunswick Hosp. Center Inc., 156 B.R. 896 (1993), the Court concluded that the Trust Fund is not part of the estate under section 541(a)(1), for the following reasons:

> After hearing oral argument, the Bankruptcy Court found that: (i) a valid trust was created under New York law; (ii) medical malpractice claimants are the intended third party beneficiaries of the Trust Fund; (iii) Brunswick does not have legal title to the Trust Fund; (iv) Brunswick does not have an equitable interest in the Trust Fund because there would be no residual beneficial interest in the Trust Fund; and (v) Brunswick never had control or discretion over the Trust Fund. Therefore, the Bankruptcy Court held in an order dated October 15, 1992 that the Trust Fund is not property of Brunswick's bankruptcy estate.

In re Brunswick Hosp. Center Inc., 156 B.R. 896 (1993).

The Trust Fund is a separate legal entity whose sole beneficiaries are the medical malpractice claimants. The

Hospital Damas Self Insurance Trust Fund is created to comply with requirements Under Section 4105 of the Insurance Code, Title 26 of the Puerto Rico Laws Annotated which requires each Hospital to be solvent to pay malpractice claims. Lifting the stay for this purpose will allow the District Court to determine the amount of the claim for which the Debtor is liable. The Court's decision on this issue is relevant to the debtor's reorganization prospects because, the debtor is compelled to have a separate Trust fund for the malpractice suits and its post-petition business model cannot continue to be based on the fact that the Trust is part of its estate. If the automatic stay is lifted to allow for the remaining issue in the District Court action to be timely resolved, the Debtor can turn its focus to formulating a confirmable plan of reorganization because it will know what resources it has, the size of the Movants' claim and what it can and cannot do as a business going forward.

## IV. CONCLUSION

WHEREFORE, the Movants respectfully request that the automatic stay be lifted or modified so that the Movants may proceed with all remaining issues in the District Court Action by whatever means are appropriate and consistent with the District Court's schedule in order to have its claim liquidated, including allowing the District Court to approve a settlement

between the parties or to enter judgment, and that the Court grant such other and further relief as is just and proper.

## CERTIFICATE OF SERVICE

I hereby certified that today, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all parties in interest.

Dated: September 30, 2010.

Respectfully submitted,

/s/ **Rafael E. Garcia Rondon**
**RAFAEL E. GARCIA RODON**
**USDC-PR 129911**
*Attorneys for the plaintiff*
Banco Popular De Puerto Rico
206 Tetuan Street
7th Floor, Suite 701
San Juan, Puerto Rico 00901
Phone: (787) 722-7788
Fax: (787) 722-7748
Email : rgrlaw@gmail.com

/s/ **Gerardo A. Carlo-Altieri**
**GERARDO A. CARLO-ALTIERI**
**USDC-PR 112009**
*Attorneys for the plaintiff*
San Jose St. #254
5th Floor,
San Juan, Puerto Rico 00901
Phone: (787) 520-6002
Fax: (787) 520-6003
Email : gaclegal@gmail.com

/s/ **Maria Soledad Lozada Figueroa**
**MARIA SOLEDAD LOZADA FIGUEROA**
**USDC-PR 222811**
*Attorneys for the plaintiff*
San Jose St. #254
3rd Floor,
San Juan, Puerto Rico 00901
Phone: (787) 520-6002
Fax: (787) 520-6003
Email : lcdamslozada@gmail.com