# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 10- 08844(MCF) |
| **HOSPITAL DAMAS, INC.** | |
| Debtor | CHAPTER 11 |

### ANSWER TO URGENT MOTION TO LIFT AUTOMATIC STAY FOR JURY TRIAL SCHEDULED IN 20 DAYS BEFORE THE U.S. DISTRICT COURT FOR PUERTO RICO

TO THE HONORABLE COURT:

COMES NOW Debtor, Hospital Damas, Inc., (hereinafter "Damas") through its undersigned counsel and very respectfully states and requests:

### I. INTRODUCTION

1. On September 30, 2010, Olga Maldonado and her son Josued Narvaez Maldonado (the "Movants") filed the motion to which this answer refers, pursuant to 11 U.S.C. § 362(d)(1), requesting relief from the stay provisions of 11 U.S.C. § 362(a) in order to proceed with a medical malpractice jury trial against Damas and other defendants arising from the death of Mr. Ferdinand Narvaez, pending before the United States District Court for the District of Puerto Rico (the "District Court"), Case number 09-1240 (CCC), and scheduled for trial for October 20, 2010.

2. According to the Movants the litigation before the District Court was commenced on March 11, 2009 and arises under 31 L.P.R.A. §§ 1802 and 1803.

3. The Movants sustain that a jury trial is the only remedy which they have which can rectify their state of affairs arising from the death of Mr. Narvaez, the Movants' husband and father.

## II. ARGUMENT

4. The automatic stay affords a debtor fundamental protections under the Bankruptcy Code. See, e.g. *Midatlantic Nat' Bank v. New Jersey Dep't of Envt'l Protection*, 474 U.S. 494, 503 (1986)("the automatic stay provisions of the Bankruptcy Code… have been described as one of the fundamental debtor protections provided by the bankruptcy law.")

5. The case law makes it clear that stay relief shall be granted upon a showing of "cause", which has no clear definition and is determined on a case-by-case basis.

6. The pendency of a case at the time of the filing of a bankruptcy petition by itself is not cause for granting relief from stay. If that were the case the purpose of Section 362(a) of granting a debtor a breathing spell from the factors that caused the bankruptcy filing in order to achieve its reorganization would be nullified, particularly as in this case, where, as set forth in item 4 of Damas' statement of affairs, it had 39 medical malpractice suits pending against it at the time of the filing of its Chapter 11 petition. *Holmes Transp.*, 931 F.2d 984, 987 (1st Cir. 1991); *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 977 (1st Cir.1982); *In re Soares*, 107 F.3d 969, 975 (1st Cir. 1997); *In re Jamo,* 283 F.3d 392, 398 (1st Cir.2002); *In Re Capitol Food Corp. of Fields Corner*, 490 F.3d 21, 26 (1st Cir. 2007).

7. Damas filed for bankruptcy relief to obtain the "breathing spell" provided by the Bankruptcy Code and to give it time to prepare a plan of reorganization. *In re Next Wave Commc'ns, Inc.*, 244 B.R. 253, 266(Bankr. S.D.N.Y. 2000). In line therewith, Damas has been proactively engaged in its efforts to reorganize for the benefit of all creditors, and if Damas is forced to incur in litigation expenses defending

the malpractice lawsuits that drove it into bankruptcy, and focus its attention thereto said efforts will be dislocated.

8. If such a door is opened, Damas would have to face those actions in different forums, retain experts and special counsel at an unsustainable cost, one of the principal reasons for the filing of its Chapter 11 petition would become ineffective and its reorganization process placed in jeopardy. *In re Unanue-Casal*, 159 B.R. 90, 100 (D.P.R. 1993) aff'd, 23 F.3d 395 (1st Cir. 1994); *In re Gold & Honey, Ltd.*, 410 B.R. 357, (Bankr. E.D. N.Y. 2009).

9. The Court must bear in mind that the Movants can file a proof of claim in Damas' Chapter 11 proceedings, as all other claimants. Pursuant to 11 U.S.C. § 502(a) such a filing creates a presumption of validity. To this effect 11 U.S.C. § 502 (a) states**:**

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

10. In the event of such a filing, in order to contest the claim, Damas would have to object thereto pursuant to 11 U.S.C. § 502 (b) and Fed. R. Bank. P. 3007 giving rise to a contested matter under Fed. R. Bank. P. 9014.

11. In the case before the District Court, Damas doesn't even have an appointed special counsel pursuant to 11 U.S.C. §§ 327 and 330, a step prior to the continuance of any proceedings in said case.

12. The Movants, in support of their request for relief from stay refer to *In re Project Orange Assocs., LLC*, 432 B.R. 89 (Bankr. D.N.Y. 2010), as grounds for advocating that the Court should use the analysis of *In re Sonnax Indus., Inc. v Tri*

*Component Prods. Corp.*, 907 F.2d. 1280 (2d. Cir. 1990) for determining if cause exists for granting relief from stay under Section 362(d).

13. The moving party must bear the initial burden to demonstrate that cause exists for lifting the stay under the *Sonnax* factors. *Id.* at 1285. If the movant fails to make an initial showing of cause, the court should deny relief without requiring any showing from the debtor that it is entitled to the continued protections of Section 362(a). *id.* Here the Movants fail to meet their burden to establish cause to lift the automatic stay.

14. *Sonnax* refers to twelve factors for making such a determination. The Movants submit that eight (8) of the twelve (12) factors are present in this case, as follows:

### a) The District Court Action Will Result in the Complete Resolution of the Issues

15. Damas doesn't dispute that if the case is tried and decided by the District Court the pending issues therein will be resolved and any contingent claim by the Movants against Damas could be quantified. However, as indicated above, such a litigation (seven day trial as advanced by the Movants) will be an unnecessary undue expense to Damas' estate and as such totally prejudicial thereto, which weighs against granting relief from stay. *In re Turner,* 161 B.R. 1, 3 (Bankr.D.Me.1993); *In re Montgomery*, 285 B.R. 345, 346 (Bankr. D.R.I. 2002). In Chapter 11 bankruptcy cases involving more complex issues, courts have recognized that a debtor's ability to act responsibly in its bankruptcy case can be hindered by the debtor's attention to litigation and expenses in multiple judicial forums. *In re Peterson*, 116 B.R. 247, 249 (D. Colo. 1990). Should litigation interfere with the administration of a bankruptcy estate, even to a slight degree, this would be enough to preclude relief from stay. *In*

Case:10-08844-MCF11 Doc#:49 Filed:10/12/10 Entered:10/12/10 14:07:52 Desc: Main
Document Page 5 of 10

| Hospital Damas, Inc. | Case No. 10-08844 (MCF) |
|---|---|
| *Answer to Urgent Motion to Lift Automatic Stay* | Page 5 |

re *United States Brass Corp.*, 173 B.R. 1000,1005 (Bankr. E.D. Tex. 1994)(citing to *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984).

### b) The Specialized Expertise of the Court

16. This is a non-factor, since the pending case entails a medical malpractice suit arising under basic principles of Puerto Rico tort law, 31 L.P.R.A. §§ 1802 and 1803, in reference to which the judges of the Bankruptcy Court are as well trained as those of the District Court to preside in this type of litigation. They don't require any specialized training as the litigation is contingent on the evidence presented, to be considered under uniform rules of civil procedure and evidence. The fact that the Honorable Carmen Consuelo Cerezo deals with this type of cases on "a daily manner" doesn't mean that this Court is not equally positioned to do so.

### c) Judgment not subject to Equitable Subordination

17. Damas accepts that if judgment is entered by the District Court, as would be the case if it is entered by this Court, the same, *per se*, would not be subject to equitable subordination, thus another non-factor for tilting the scales in favor of granting relief from stay.

18. Movants fail to point any reason why they cannot litigate their claims against Damas within the claim process established by the Bankruptcy Code and Bankruptcy Rules, just like other similarly situated creditors. The Movants ignore that Damas may settle or allow the claim through the Chapter 11 claim process.

### d) Resolution Will Not Result in Avoidable Judicial Lien

19. As in the case of the equitable subordination factor, any judgment entered by the District Court, as well as by this Court, will not result in an avoidable

judicial lien. Thus, another non-factor that would support granting relief from stay.

### e) The Interests of Judicial Economy Favor the District Court Action

20. The Movants advocate that the advance stage of the litigation before the District Court warrants granting relief from stay for the case to continue there due to judicial economy. Nevertheless, as stated above, Damas doesn't even have counsel appointed by the Court in the action before the District Court, and the cost of said litigation will be detrimental to Damas' estate and its reorganization process, a countervailing factor to be weighed by the Court.

21. Compelling Damas to litigate this matter in the District Court will impose significant costs on Damas since the Movants fail to account for the negative precedent such relief would set. The Movants' action is just one of the 39 medical malpractice cases pending against Damas. The Movants do not distinguish their lawsuit from the other such cases pending against Damas in other forums, nor do they provide any reason or special circumstances why their case should be treated different from the other cases.

22. In similar circumstances courts have held that lifting the automatic stay is not warranted. *See, e.g. In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying motion for relief from the automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case"); *In re Northwest Airlines Corp.* 2006 WL 687163, at 2 (Bankr. S.D.N.Y. 2006) (to allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation … "[t]he distraction and expense of defending such litigation would interfere with judicial

economy and the Debtors' process of reorganization.") (citations and internal quotations omitted); *In re Celotex Corp.* 140 B.R. 912, 916 (Bankr. M.D. Fla. 1992) (preserving automatic stay where lifting stay would yield an "avalanche of litigation."). Given the other medical malpractice lawsuits against Damas and the flood of litigation likely to ensue if relief from the stay is granted to the Movants, this Court should preserve the automatic stay.

23. Therefore the interests of judicial economy and the expeditious and economical resolution of litigation would be best served by allowing the stay to remain in place while Damas' implements a claims resolution process for the pending malpractice actions where all meritorious pre-petition claims can share in the Self Insurance Fund (the "Fund") created therefor not allowing the run to the Court house proposed by the Movants to attempt to achieve a first come first served situation.

### f) The Parties are Ready for Trial in the District Court

24. Damas adopts herein what is stated in the preceding paragraphs.

### g) Impact of the Stay on the Parties and the Balance of Harms

25. The balance of the harm favors Damas, since its financial burden in proceeding with the litigation before the District Court and its detrimental effect on Damas' reorganization process outweighs any harm to the Movants, who all they have to do is file their claims with the Clerk of the Court, a simple straightforward process. Thus, maintaining the stay will be in the best interest of Damas because lifting the stay would severely harm its estate, whereas preserving the stay would not harm the Movants given that the likelihood of any relief against Damas can be attained with greater efficiency and reduced costs through the claim process.

### h) Whether the Action Primarily Involves Third Parties

26. Contrary to the Movants' assertion the Fund listed in Damas' Schedule B as part of its assets is property of Damas' estate, since while as originally conceived it was to be funded by Damas principal, Damas Foundation, Inc., the present funds on deposit in the Fund were contributed by Damas and belong thereto.

27. 11 U.S.C. § 541(a) states:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

28. Property of a bankruptcy estate is extensive and generally includes "all" legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). The nature and extent of a debtor's interest in property is determined by state law, with the estate having no greater rights in property than those held by the debtor prior to bankruptcy. *Butner v. United States*, 440 U.S. 48 (1979).

29. Damas certainly has an interest on the Fund, since it was created as funding for malpractice actions against Damas.

30. The fact that the Fund's purpose, pursuant to 26 L.P.R.A. 4105 is for the payment of medical malpractice claims against Damas, doesn't mean that the $1,002,498.42 is earmarked for the Movants. Those funds are equally available to all pre-petition claimants against Damas for medical malpractice claims which may be adjudicated in their favor, to share pro-rata therein. Damas as a debtor-in-possession, in its fiduciary capacity to all creditors, and this Court must assure

themselves that the $1,002,498.42 is equitably distributed among all pre-petition claimants with valid malpractice claims and not on a first come basis as intended by the Movants.

31. Under the *Sonnax* factors it is obvious that there is a direct connection between the case before the District Court and Damas Chapter 11 proceedings, and that its prosecution would cause interference with the latter. Damas doesn't have an insurer which has assumed responsibility for defending Damas before the District Cour, the District Court action doesn't primarily involve third parties and the same will adversely affect Damas' resources and thus the interests of other creditors.

32. The Movants go to the extent of requesting that their intended relief be made extensive to a settlement before the District Court, ignoring the provisions of Fed. R. Bank. P. 2002(a)(3), and 9019.

33. The litigation in the District Court would prejudice the interest of other creditors. Granting the Motion to allow the District Court action to continue threatens Damas' reorganization efforts, and will harm all creditors.

34. In *Borman v. Raymark Industries, Inc.*, 946 F.2d 1031 (3rd Cir. 1991), the court held that the automatic stay provides protection to a debtor in actions brought directly against the debtor, regardless of the fact that the judgment could be satisfied from an independent source. "If the automatic stay were concerned only with the actual effect of a judgment on the debtor's property, it would follow that we should permit all actions against the debtor to proceed until entry of judgment, with only execution of judgment being stayed. We do not believe this was Congress' intent." 946 F.2d at 1036. This protection is to avoid interference with the rehabilitation process in order for the debtor to further comply with its obligations and

Case:10-08844-MCF11 Doc#:49 Filed:10/12/10 Entered:10/12/10 14:07:52 Desc: Main
Document Page 10 of 10

| Hospital Damas, Inc. | Case No. 10-08844 (MCF) |
|---|---|
| *Answer to Urgent Motion to Lift Automatic Stay* | Page 10 |

to avoid depletion of debtor's assets due to legal costs arising in defending proceedings against the debtor.

35. As discussed above several of the factors discussed by the Movants weigh against lifting the automatic stay because such a relief will interfere with the bankruptcy case and prejudice the interest of other creditors by forcing Damas to expend resources litigating before the District Court, opening the door to an onslaught of similar stay motions which are likely to ensue. Furthermore the litigation before the District Court is not to be defended or funded by Damas' insurance company, as there is none, Debtor does not have a special counsel appointed therefor, and Damas' bankruptcy case has been pending for less than a month, thus Damas needs to focus its attention and resources on its reorganization.

### III. CONCLUSION

**WHEREFORE**, Damas respectfully moves for the denial of the Movants' motion for relief from the stay provisions of 11 U.S.C. § 362(a) as there is no cause therefor, for the reasons set forth above.

San Juan, Puerto Rico, this 12th day of October, 2010.

*s/***CHARLES A. CUPRILL-HERNANDEZ**
**USDC-PR 114312**
Charles A. Cuprill, P.S.C. Law Offices
356 Fortaleza Street, Second Floor
San Juan, PR 00901
Tel: 787-977-0515
Fax: 787-977-0518
E-mail: ccuprill@cuprill.com