**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 10-08844 EAG |
| HOSPITAL DE DAMAS, INC., | CHAPTER 11 |
| DEBTOR. | FILED & ENTERED ON 04/09/2012 |

**OPINION AND ORDER**

Hospital de Damas, Inc. (the "debtor") is a not-for-profit corporation organized under the laws of the Commonwealth of Puerto Rico [dkt. nos. 1 & 2]. It operates, since 1987, a hospital in Ponce, Puerto Rico known as Hospital Damas, and is attempting to reorganize its operations under chapter 11 of the Bankruptcy Code [dkt. nos. 819 & 820].

This proceeding is before the court on a motion to dismiss filed by creditors Nitza Enid Sánchez-Rodríguez, Alma Estela Sánchez-Rodríguez, José Iván Sánchez-Rodríguez, Altamira Rodríguez-Pérez, Carlos Alberto Rodríguez-Pérez, Alba Marta Rodríguez-Pérez, Dr. Sonia Hodge, Russell Rodríguez-Pérez, and Mayra Lillian Nigaglioni (the "medical malpractice claimants") [dkt. no. 953]; the opposition to the motion to dismiss filed by the debtor [dkt. no. 973]; the response to the motion to dismiss filed by the Unsecured Creditors' Committee (the "UCC") [dkt. no. 974]; the reply to the opposition filed by the medical malpractice claimants [dkt. no. 986]; and the joinder to the motion to dismiss and reply to the opposition to the motion to dismiss filed by Olga Maldonado and her son Josue Narvaez Maldonado, Lizbeth Vargas Colón and Jaime M. Cedeño in representation of their minor daughter Lizbeth Cedeño Vargas, Baudilio Luciano Ortiz, Joel Luciano Caraballo, Juan Orta Rodríguez, Juan Orta López de Victoria, Ferando Vargas Lopes de Victoria, and Tomas Orta López de Victoria (the "other medical malpractice claimants" or "movants" when

referring collectively to the medical malpractice claimants and the other medical malpractice claimants) [dkt. no. 994].

The motion to dismiss raises four general grounds for dismissal. The first ground is bad faith based on alleged false statements and misrepresentations by the debtor. The second ground is under section 1112(b)(4)(H), failure to provide information, and also on equitable principles. The third ground is that the amended plan is not confirmable. The fourth ground is that the case should be dismissed because the debtor is committing fraud. For the reasons set forth below, the motion to dismiss and the joinder to the motion to dismiss are DENIED.

## I. PROCEDURAL BACKGROUND

The debtor filed the petition for relief under chapter 11 of the Bankruptcy Code in the captioned case on September 24, 2010 [dkt. no. 1]. On May 31, 2011, the debtor filed its disclosure statement and plan of reorganization [dkt. nos. 576 & 577]. At the hearing on the disclosure statement held on October 20, 2011, the court gave the debtor an opportunity to amend its disclosure statement and plan [dkt. No. 811]. An amended disclosure statement and plan were filed jointly by the debtor and UCC on November 4, 2011 [dkt. nos. 819 & 820]. At the December 6, 2011 hearing on the amended disclosure statement, the court approved the amended disclosure statement and set the confirmation hearing on the amended plan for February 9, 2012 [dkt. nos. 859 & 863].

Prior to the confirmation hearing, two of the medical malpractice claimants and the other medical malpractice claimants filed an objection to the confirmation of the amended plan of reorganization [dkt. no. 890]. Two other groups of medical malpractice creditors joined that objection [dkt. nos. 925 & 928]. The objections, among other things, allege that the court has no jurisdiction over the self-insurance fund from which the amended plan proposes to pay all of the

2

medical malpractice creditors. At the confirmation hearing, the court refrained from hearing evidence on the amended plan and questioned the debtor about the court's jurisdiction over the self-insurance fund. The debtor was given time to file a stipulation as to the self-insurance fund, and the confirmation hearing was continued to March 23, 2012 [dkt. No. 942]. The March 23 date was converted from a hearing on confirmation to one on the motion to dismiss, and the hearing on the confirmation of the amended plan was rescheduled to April 27, 2012 [dkt. no. 1011].

On February 28, 2012, the medical malpractice claimants filed a motion to dismiss alleging that the debtor was operating the hospital without a license and that the debtor's operation of the hospital was illegal and unlawful [dkt. no. 953]. The medical malpractice claimants also allege, among other things, bad faith based on false statements and misrepresented facts by the debtor in prejudice to the creditors. They argue that the debtor's bad faith warrants the dismissal of the case pursuant to section 1112 of the Bankruptcy Code.

The debtor opposed dismissal by denying any bad faith on its part and alleging, among other things, that the debtor has been operating the hospital since 1987 and that said operation is legal and accepted by the pertinent regulatory agency [dkt. no. 973]. The UCC also opposed dismissal alleging that the movants failed to carry their burden of showing that cause exists under section 1112 even if the court were to find that the debtor lacked the required licenses to operate the hospital [dkt. no. 974].

The medical malpractice claimants replied to the debtor's opposition stating that the evidence provided by the debtor in its opposition shows that there is no license that authorizes the debtor to operate the facility known as Hospital Damas [dkt. no. 986]. The other medical malpractice

claimants also allege that the debtor misled the creditors and the court by interchangeably using the facility's name, Hospital Damas, as if that name referred to the debtor itself [dkt. no. 994].

The evidentiary hearing on the motion to dismiss was held on March 23, 2012. The parties examined witnesses, presented documentary evidence, argued their respective positions, and then submitted the controversy for resolution by the court.

The court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the general order of referral of title 11 proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. APPLICABLE LAW AND DISCUSSION

Section 1112(b) of the Bankruptcy Code provides for the dismissal or conversion of a chapter 11 case upon a finding of cause. The initial burden is on the movant to argue and present evidence, by a preponderance-of-the-evidence standard, to prove its position that there is cause for either conversion or dismissal of the chapter 11 case, whichever is in the best interests of creditors and the estate. See 7 Alan N. Resnik et al., Collier on Bankruptcy ¶1112.04[4] (16th ed. 2011). "Thus, until the movant carries this burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative." Id.

Once the movant establishes cause, the burden shifts to the debtor to demonstrate by evidence "unusual circumstances" that establish that dismissal or conversion to chapter 7 is not in the best interests of the creditors and the estate. See 7 Collier on Bankruptcy at ¶1112.05[2]. The bankruptcy court retains discretion in determining whether unusual circumstances exist and whether conversion or dismissal is in the best interest of creditors and the estate. See Id.; Gilroy v. Ameriquest Mortg.

Co. (In re Gilroy), 2008 Bankr. Lexis 3968 (B.A.P. 1st Cir. 2008). A determination of unusual circumstances is fact intensive and contemplates facts that are not common to chapter 11 cases. See 7 Collier on Bankruptcy at ¶1112.05[2].

When cause is established, the debtor or other parties opposing the section 1112(b) motion must also establish all of the factual elements stated in subparagraphs (A) and (B) of section 1112(b)(2) in order to defeat a motion to dismiss or convert. See 7 Collier on Bankruptcy at ¶1112.05[2]. A case must not be converted or dismissed if the bankruptcy court finds that: "(1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the 'cause' for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time." In re Orbit Petroleum, Inc., 395 B.R. 145, 148 (Bankr. D. N.M. 2008) aff'd., 421 B.R. 602 (B.A.P. 10th Cir. 2009). If there are no "unusual circumstances" then, the bankruptcy court must apply the section 1112(b)(2) analysis to determine whether the chapter 11 case should be dismissed or converted.[1]

Subsection 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of 16 different examples of cause. In addition to granting relief under one of the expressly described examples of cause in section 1112(b)(4), the court may also dismiss a chapter 11 case for lack of good faith. See 7 Collier on Bankruptcy at ¶1112.07[1].

---

[1]Involuntary conversion to chapter 7 is not an option in this case as the debtor is "a corporation that is not a moneyed, business, or commercial corporation . . . ." 11 U.S.C. § 1112(c).

Some courts have stated that it is "well established" that good faith is an implicit prerequisite to filing a chapter 11 petition, and that the lack of good faith in filing a chapter 11 petition constitutes "cause" under section 1112(b). See Farnsworth v. Morese (In re Farnsworth), 2009 Bankr. LEXIS 3699 (B.A.P. 1st Cir. 2009) (quoting In re Gencarelli, 353 B.R. 771, 780-81 (D.R.I. 2006)).

The First Circuit, in the case of In re Capital Food Corp., 490 F.3d 21, 24 (1st Cir. 2007), declined to decide whether section 1112(b) imposes a good faith filing requirement. But, it noted that even those courts which hold that section 1112(b) imposes a good faith filing requirement demand that a movant first make a *prima facie* showing of bad faith before a debtor is required to demonstrate that it filed its bankruptcy petition in good faith. Capital Foods, 490 F.3d at 24. The First Circuit went on to observe that "[t]he [§ 1112(b) good faith filing] inquiry often centers around the debtor's bona fide need for a breathing spell to reorganize." Capital Foods, 490 F.3d at 25 (quoting In re Original IFPC S'holders, Inc., 317 B.R. 738, 750 (Bankr. N.D.Ill.2004) (alteration in original)). "[A]pplication of the standard necessarily turns on the totality of circumstances of each individual case." 7 Collier on Bankruptcy at ¶1112.07[2].

The first ground for dismissal argued in the motion to dismiss is bad faith based on alleged false statements and misrepresentations by the debtor. According to the medical malpractice claimants, the debtor's bad faith arises from misrepresentations in documents filed by it in this case stating that it is legally operating a hospital facility when in fact the debtor does not have a license to operate a hospital issued by the Puerto Rico Department of Health ("PRDOH"). The PRDOH is the local agency in Puerto Rico in charge of licensing and regulating hospitals under its jurisdiction pursuant to Puerto Rico Law Number 101 of June 26, 1965, as amended.

The movants called Ms. Wanda I. Rodríguez-Hernández, Esq., from the PRDOH, to testify at the hearing on the motion to dismiss. Ms. Rodríguez-Hernández is the Assistant Secretary of Regulation and Accreditation of Medical Facilities (Spanish-language acronym, "SARAFS") at the PRDOH. Ms. Rodríguez-Hernández testified that, in order to operate a hospital facility in Puerto Rico, an entity must first have a certificate of need and convenience ("CNC") from the PRDOH. Once an entity has a CNC, it can then request and obtain from the PRDOH the required license to operate a hospital facility. Without both the CNC and required license from the PRDOH, an entity cannot legally operate a hospital facility in Puerto Rico. The CNC and operational license issued by the PRDOH are not transferable. PRDOH approval is also required to lease a hospital facility.

To support the allegation that the debtor has been operating Hospital Damas without the required CNC and license from the PRDOH, the medical malpractice claimants presented two SARAFS certifications signed by Ms. Rodríguez-Hernández on February 17, 2012. The first certifies that the debtor neither has a CNC issued nor has a CNC approved to lease the facility known as Hospital Damas [Ex. G]. It also certifies that according to the information in SARAFS's records, Fundacion Damas, Inc. appears as the owner of the Hospital Damas facility [Ex. G]. The second certifies that the entity authorized to operate the hospital installation known as Hospital Damas is Fundación Damas, Inc. ("Fundación Damas") [Ex. H].

Fundación Damas, a not-for-profit corporation, owns the real property on which the hospital facility known as Hospital Damas is located. Prior to 1987, it operated Hospital Damas. In 1987, Fundación Damas incorporated the debtor and then leased the hospital facility to the debtor.

Ms. Rodríguez-Hernández reiterated the information contained in the two SARAFS certifications (marked as Exhibits G and H) and testified that the PRDOH is clear that its records

7

show that the entity that holds the CNC and license to operate Hospital Damas is Fundación Damas. Ms. Rodríguez-Hernández also testified that the she had neither signed nor referred to the attention of the Secretary of Health any license to be issued on behalf of the debtor.

However, in cross-examination by the debtor, Ms. Rodríguez-Hernández admitted that the PRDOH had issued a new CNC on March 19, 2012, for Hospital Damas [Ex. C]. This new CNC states that it was issued to make clear that the debtor, pursuant to a management agreement dated March 14, 2012, administers and operates Hospital Damas [Ex. C]. This new CNC further states that the list of attached CNCs issued in favor of Fundación Damas, and which the debtor will operate and administer, form an integral part of the new CNC and are incorporated by reference into the same [Ex. C].

The debtor also confronted Ms. Rodríguez-Hernández with a "Report of Examining Officer" signed by her on August 3, 2001 [Ex. 1]. In this report, Ms. Rodríguez-Hernández made a finding of fact that Hospital Damas is operated and administered by the debtor, whose only member is Fundación Damas [Ex. 1 at fact finding no. 3]. Ms. Rodríguez-Hernández countered that the Secretary of Health was not obligated to accepted her 2001 finding of fact.

Finally, the debtor confronted Ms. Rodríguez-Hernández with a CNC issued on December 16, 1999, to the debtor to add 25 acute-care beds, for a total of 331, to Hospital Damas [Ex. 2]. Here, Ms. Rodríguez-Hernández countered that this CNC had been issued in error by the PRDOH because the debtor did not have a license to operate a hospital facility and, thus, could not increase the number of beds in an unlicensed hospital facility.

The movants also called Mr. Julio Colón-Rivera, the debtor's Chief Financial Officer, as their witness. During his examination, Mr. Colón-Rivera testified that he understood that Hospital Damas

had the required license to operate. In support of this contention, Mr. Colón-Rivera made reference to two documents. The first is a license to operate the hospital issued to Hospital Damas of Fundación Damas, which authorizes the operation of the hospital until October 13, 2012 [Ex. B]. The second is the CNC issued on March 19, 2012, which was discussed above [Ex. C]. During the examination, Mr. Colón-Rivera also testified as to different certifications and licenses issued by the PRDOH to Fundación Damas, Hospital Damas of Fundación Damas Inc., and Hospital Damas, Inc. Mr. Colón-Rivera further testified that the debtor's representatives were now aware of the confusion as to the hospital's license that exist at the PRDOH and were in the process of clarifying the confusion: hence, the new CNC issued on March 19, 2012, on the debtor's behalf [Ex. C].

Mr. Colón-Rivera signed the debtor's petition, schedules, and statement of financial affairs. When asked why he did not list any CNC or license in schedule B, Mr. Colón-Rivera testified that he did not do so, on the advise of debtor's financial consultant, because they had no monetary value.

In closing arguments, the movants argued that since the filing of this case the debtor has had no CNC and no license to operate the hospital. The movants conclude that the debtor's case should be dismissed because this is an illegal operation under the protection of bankruptcy court. On the other hand, the debtor argued that the hospital has been operated by the debtor since 1987 with the knowledge of the PRDOH. If there is any illegality in the operation–which the debtor denies–it argues that the PRDOH, not the court, is the appropriate agency to take regulatory action here.

The evidence presented establishes that the debtor has been operating Hospital Damas since 1987. The evidence also establishes that, at least as of February 17, 2012 (the date of the two SARAFS certifications), the debtor did not have, clearly and unambiguously in its name, the CNC and license from the PRDOH required to operate a hospital facility under Puerto Rico Law

Number 101 of June 26, 1965, as amended. Rather, the debtor has apparently been operating for 25 years a hospital facility under a CNC and license issued to Fundación Damas. Plainly, the CNC and license requirement is something that should have been taken care of in 1987 when Fundación Damas transferred the hospital operation to the debtor. No evidence was presented by any party as to why it was not. Specifically, the movants did not present any evidence at the hearing from which the court could draw a reasonable inference that the debtor, a not-for-profit corporation, had anything to gain by not putting the CNCs and licenses from the PRDOH in the debtor's name prior to the filing of the motion to dismiss. Rather, the court finds that since there was sufficient confusion at the PRDOH regarding the CNCs and licenses of Hospital Damas to lead the PRDOH to erroneously issue a CNC to the debtor on December 16, 1999 [Ex. 2] to increase the hospital operation by 25 beds, it is reasonable to infer that the debtor itself inadvertently failed to realize that there was a problem with its CNCs and licenses prior to the filing of the motion to dismiss. In making this finding, the court takes into consideration the facts that the PRDOH has known, at least since 2001 [Ex. 1], that the debtor has been operating and administering Hospital Damas and that the PRDOH has itself been inconsistent in the issuance of licenses to operate Hospital Damas. Some licenses are issued to Hospital Damas, Inc.; others, to Hospital Damas of Fundación Damas, Inc.; while others, to Fundación Damas, Inc. Although Ms. Hernández-Rodríguez testified that it was clear that according to the PRDOH records the only authorized entity to operate Hospital Damas was Fundación Damas, the actions of her own agency contradict that conclusion.

Based on the above, the court finds that the movants have failed to establish debtor's lack of good faith and, by extension, that the debtor committed fraud.

The movants argue that this court would be condoning an illegal operation by the debtor if it failed to dismiss the case. The court disagrees. The agency specially tasked with licensing, regulating, and policing the debtor's operation is the PRDOH. And, nothing in the Bankruptcy Code prevents the PRDOH from exercising it regulatory and enforcement authority over the debtor. 11 U.S.C. § 362(b)(4). Further, even the medical malpractice claimants admit that "a certificate of need and convenience is a planning mechanism, through which the Secretary of Health formulates and implements public policy over health services." [Dkt. no. 953 at p. 4.] The fact that the PRDOH issued a new CNC to the debtor on March 19, 2012, to operate and administer Hospital Damas is a declaration by the Secretary of Health that, as a matter of public policy, the debtor's operation provides needed services to the Ponce population and contributes to the orderly and adequate development of health services [Ex. 2]. The court will not substitute the opinion of the Secretary of Health in health-related matters of what is in the public interest for that of the movants. To the extent a missing license could prevent the debtor from reorganizing its operations, that issue is one for the hearing on confirmation, which is presently set for April 27, 2012.

Even if, *arguendo,* the lack of good faith were a cause for dismissal under section 1112(b) and the movants had established it by a preponderance of the evidence, the court would still deny the motion to dismiss.[2] This is so because the court finds "unusual circumstances establishing that converting or dismissing the case is not in the best interest of creditors and the estate" pursuant to section 1112(b)(2) and the other factors required by subsections (A) and (B), as follows:

---

[2] In their motion to dismiss, the medical malpractice claimants also argue that cause exists under section 1112(b)(4)(H) - "failure timely to provide information or attend meetings reasonably requested by the United States trustee." However, the movants did not provide any evidence at the hearing to find cause under this subsection.

1. The general unsecured creditors voted in favor of the initial plan of reorganization; therefore, there is a reasonable likelihood that the amended plan will be confirmed within a reasonable time.

2. The monthly operating reports show that the debtor has millions in cash on hand that will be used to fund the amended plan.

3. There is no evidence that there is a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation.

4. The debtor recently obtained a new CNC from the PRDOH, and it is reasonable to assume that any remaining license deficiencies or misunderstandings will be cured before the confirmation hearing.

5. The Bankruptcy Code does not prevent the PRDOH from taking any enforcement or police action it deems necessary against the debtor.

6. Several of the movants have already filed suit in the district court against Fundación Damas.

## III. CONCLUSION.

Based on the foregoing, the motion to dismiss filed by the medical malpractice claimants [dkt. no. 953] and the joinder filed by the other medical malpractice claimants [dkt. no. 994] are hereby DENIED.

In San Juan, Puerto Rico, this 9th day of April, 2012.

Edward A. Godoy
U.S. Bankruptcy Judge

12