**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 10-08844 EAG |
| HOSPITAL DE DAMAS, INC., | CHAPTER 11 |
| DEBTOR. | FILED & ENTERED ON 07/09/2013 |

**OPINION AND ORDER**

Hospital de Damas, Inc. has operated since 1987 a not-for-profit hospital known as Hospital de Damas in Ponce, Puerto Rico ("Damas").  On September 24, 2010, Damas filed a petition for relief under chapter 11 of the Bankruptcy Code.  Certain union members who were or are also employees of Damas filed proofs of claim 95 and 98 for the payment of 2009 and 2008 Christmas bonuses (the "Claimants").  Damas objected to these proofs of claim.

Currently pending before the court is a motion for summary judgment brought by Damas on its objections to proofs of claim 95 and 98, Claimants' opposition to the motion for summary judgment, and Damas' reply in support of its motion for summary judgment.  For the reasons stated herein, Damas' motion for summary judgment is hereby granted and proofs of claim 95 and 98 are, therefore, disallowed.

**Jurisdiction**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**Procedural Background**

On January 13, 2011, the Claimants filed proofs of claim 95 and 98 for the 2009 and 2008 Christmas bonuses, respectively ("POC 95" and "POC 98"). Damas objected to both proofs of claim, arguing that nothing was owed under the Christmas Bonus Act of Puerto Rico because it obtained exemptions from the Puerto Rico Department of Labor ("PRDOL"). P.R. Stat. Ann. tit. 29, §§ 501-07 (the "Bonus Act"). [Docket Nos. 553 & 555.]

The Claimants filed a motion for extension of time to conduct discovery and oppose Damas' objection to POC 98. [Docket No. 626.] Although the Claimants' motion was technically a request for an extension, it provided the legal basis for the Claimants' opposition: the exemption from the PRDOL did not apply to the unionized employees of Damas. [Docket No. 626 at ¶8.] But, since the Claimants did not file timely any further opposition to Damas' objection to POC 98, the court granted the objection to POC 98. [Docket No. 743.] Claimants' motion for reconsideration of the order of disallowance and Damas' opposition to it are still pending resolution by the court. [Docket Nos. 802 & 873.]

The Claimants also moved for an extension of time to conduct discovery and oppose the objection to POC 95, again asserting that the exemption from the PRDOL did not apply to the unionized employees of Damas. [Docket No. 625 at ¶5.] They subsequently filed a more substantial opposition, again contesting the application of the PRDOL exemption to them. [Docket No. 787.]

On January 4, 2013, Damas and the Claimants submitted a joint pretrial report as to POCs 95 and 98. [Docket Nos. 1287 & 1288.] At the pretrial hearing of January 8, 2013, the court scheduled for trial the contested matters on POCs 95 and 98. [Docket No. 1298.]

2

However, special counsel for Damas suggested that this controversy could be disposed of through summary judgment. [Docket No. 1298.] Damas then submitted its motion for summary judgment, which the Claimants opposed, and Damas replied in support. [Docket Nos. 1304, 1317 & 1319.]

**Uncontested Facts**

The following facts are uncontested pursuant to Fed. R. Civ. P. 56 and D.P.R. Civ. R. 56, made applicable to these proceedings through Fed. R. Bankr. P. 9014(c) and 7056 and P.R. LBR 1001-1(b) and (d). Also considered for purposes of this Opinion and Order are the Claimants' proposed findings of fact in the joint pretrial report on POCs 95 and 98 and supporting exhibits. [Docket Nos. 1287 & 1288.]

The Claimants were or are employees of Damas represented by the Unidad Laboral de Enfermeras(os) y Empleados de la Salud (the "Union"). [Damas' Uncontested Facts at ¶ 18, Docket No. 1304; Claimants' Reply to Uncontested Facts at ¶18, Docket No. 1317-2.] The collective-bargaining agreements between the majority of the bargaining units of the Union and Damas expired in December 2006. [Damas' Uncontested Facts at ¶26, Docket No. 1304; Claimants' Reply to Uncontested Facts at ¶26, Docket No. 1317-2.] After the expiration of the collective-bargaining agreements in 2006, negotiations continued between the Union and Damas to reach new agreements. [Damas' Uncontested Facts at ¶3, Docket No 1304; Claimants' Reply to Uncontested Facts at ¶3, Docket No. 1317-2.]

On October 28, 2008, Damas wrote to the Union that it would not be paying the 2008 Christmas bonus and that it would be applying for an exemption from the PRDOL. [Damas' Uncontested Facts at ¶¶4 & 7, Docket No 1304; Claimants' Reply to Uncontested Facts at ¶¶4

& 7, Docket No. 1317-2.] The Executive Director of the Union sent a letter dated November 24, 2008, to the Secretary of the PRDOL stating that Damas had advised the Union in writing that it would not be paying the 2008 Christmas bonus and of Damas' intention to request an exemption from the PRDOL. [Claimants' Exhibit 3, Docket No. 1288-2.] Legal counsel for the Union sent another letter dated December 9, 2008, to the Secretary of the PRDOL requesting that the PRDOL deny Damas' request for an exemption. [Claimants' Exhibit 3, Docket No. 802-3.] The Sub-Director of the PRDOL, in a letter dated December 12, 2008, responded to the Union by quoting the exception language of P.R. Laws Ann. tit. 21, § 506 and stating that, therefore, the exemption granted to Damas "will only be applicable to employees who do not belong to the bargaining unit," and that "[a]s for workers who receive annual bonuses under collective bargaining agreements, the agreement will be the law between the parties." [Claimants' Exhibit 4, Docket No. 1288-2.] The PRDOL granted Damas' request for an exemption to the payment of the 2008 Christmas bonus under the Bonus Act. [Damas' Exhibit D, Docket No. 1304-1.] But, the Claimants assert that Damas received an exemption in 2008 only for its non-union employees. [Claimants' Reply to Uncontested Facts at ¶7, Docket No. 1317-2.] Damas did not pay the 2008 Christmas bonus to any of the Claimants. [POC 98; Claimants' Statement of Proposed Facts at ¶ 7, Docket No. 1317-1.]

The following year the Claimants sent another letter, dated December 21, 2009, to the PRDOL, inquiring whether Damas would be exempted from payment of the 2009 Christmas bonus to Union employees. [Claimants' Exhibit 7, Docket No. 1288-2.] The PRDOL responded the same as before: quoting the exception language of P.R. Laws Ann. tit. 21, § 506 and stating, therefore, the exemption granted to Damas "will only be applicable to employees who do not

belong to the bargaining unit . . . ." [Claimants' Exhibit 8, Docket No. 1288-2.] Again, the PRDOL granted Damas' request for an exemption to the payment of the 2009 Christmas bonus under the Bonus Act. [Damas' Exhibit E, Docket No. 1304-1.] But again, the Claimants assert that Damas received an exemption in 2009 only for its non-union employees. [Claimants' Reply to Uncontested Facts at ¶7, Docket No. 1317-2.] And again, Damas did not pay the 2009 Christmas bonus to any of the Claimants. [POC 95; Claimants' Statement of Proposed Facts at ¶ 7, Docket No. 1317-1.]

The Union filed with the National Labor Relations Board ("NLRB") a charge of unfair labor practice for the non-payment of the 2008 Christmas bonus. [Damas' Exhibit A, Docket No. 1304-1.] The charge was subsequently withdrawn by the Union. [Damas' Uncontested Facts at ¶¶ 9-10, Docket No. 1304; Claimant's Reply to Uncontested Facts at ¶¶ 9-10, Docket No. 1317-2; Damas' Exhibit B, Docket No. 1304-1.] The President of the Union stated, in an affidavit, that the charge before the NLRB "was withdrawn by instructions of Radames Quiñones Aponte, executive director of the union, in order to permit the union member employees of Damas Hospital to file individual claims in state court for payment of the Christmas Bonuses for 2008." [Claimants' Exhibit 16, Docket No. 1317-4.]

The Claimants filed two separate cases in the Ponce Superior Court claiming the 2008 and 2009 Christmas bonuses, which were later consolidated by the state court. [Complaint No. JPE2009-0268 attached to POC 98; Complaint No. JPE2009-0964 attached to POC 95; Damas' Uncontested Facts at ¶¶ 11-13, Docket No. 1304; Claimants' Reply to Uncontested Facts at ¶¶ 11-13, Docket No. 1317-2; Damas' Exhibit C, Docket No. 1304-1.] The Ponce court entered judgment for Damas, ruling that the subject matter of the claims was within the exclusive

jurisdiction of the NLRB as an unfair labor practice. [Damas' Uncontested Facts at ¶ 14, Docket No. 1304; Claimants' Reply to Uncontested Facts at ¶ 14, Docket No. 1317-2; Damas' Exhibit C, Docket No. 1304-1.] The Claimants appealed the Ponce judgment to the Puerto Rico Court of Appeals. [Damas' Uncontested Facts at ¶15, Docket No. 1304; Claimants' Reply to Uncontested Facts at ¶15, Docket No. 1317-2.]

The appeal was stayed by the filing of Damas' bankruptcy petition on September 24, 2010. [Damas' Uncontested Facts at ¶¶16-17, Docket No. 1304; Claimants' Reply to Uncontested Facts at ¶¶16-17, Docket No. 1317-2; Docket No. 1.] On January 13, 2011, the Claimants filed proofs of claim for Christmas bonuses in the amounts of $702,912.09 for 2008 and $647,362.75 for 2009. [POC 98; POC 95.]

**Summary Judgment Standard**

The standard for summary judgment is well-known. Pursuant to Rule 56, made applicable to these proceedings by Fed. R. Bankr. P. 7056 and 9014(c), summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). The moving party bears the burden of showing that "no genuine issue exists as to any material fact" and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. P.R. Tel. Co., 110 F. 3d 174, 178 (1st Cir. 1997).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issues exists" that

would warrant the court's denial of the motion for summary judgment. McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995).  For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Id.  However, not every factual dispute is sufficient to frustrate summary judgment; the contested fact must be material and the dispute over it must be genuine.  Id.  An issue is "genuine" if it could be resolved in favor of either party.  A fact is "material" if it is potentially outcome-determinative.  See Calero-Cerezo v. U.S. Dep't of Justice, 355 F. 3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).

**Legal Analysis**

First, so that the record is clear and so that POC 98 and Damas' objection to it can be adjudicated on the merits, the court vacates the order at docket number 743 which granted the objection as unopposed. The court finds that the motion for an extension of time to oppose the objection provided enough of the Claimants' legal argument, though only the bare bones, to prevent granting the objection as unopposed. Thus, the Claimants' motion, at docket number 802, requesting that the court vacate its order disallowing POC 98 is granted as to that remedy only. Both POCs 95 and 98 and the objections to them are now back on the table for disposition by summary judgment.

Damas moves the court for summary judgment on several grounds, and argues that there is no genuine issue as to any material fact which prevents the entry of summary judgment as a matter of law in its favor on any of its grounds. The Claimants oppose summary judgment on several grounds, including that there are genuine issues as to material facts in dispute. The court concludes, after drawing all possible inferences in favor of the Claimants, that there is no genuine issue as to any material fact needed to resolve the narrow legal grounds raised by Damas in its motion for summary judgment to disallow POCs 95 and 98.

At the inception of these contested matters, the court raised the question: who are the Claimants? Is it Jose O. Alverio Diaz, the only creditor named on the face of POCs 95 and 98? Is it the hundreds of Union employees identified in the attachments to POCs 95 and 98? Or is it the Union? Damas also raised the question in its motion for summary judgment. For purposes of deciding the motion for summary judgment, the court draws the inference most favorable to the Claimants: that they are the hundreds of Union employees identified in the

8

attachments to POCs 95 and 98 or the Union, depending on the legal basis argued by them or it to support those claims. But, employees or Union, the result is the same.

Damas argues that the claims, which are based on the nonpayment of the 2008 and 2009 Christmas bonuses, are unfair labor practice claims that could only be brought by the Union to the NLRB for resolution, and that the term to do so elapsed. Damas also argues that to the extent, if any, the court could ignore the primary jurisdiction of the NLRB and confine the legal analysis of its objections to the Bonus Act, the PRDOL exempted Damas from paying any Christmas bonus mandated by the Bonus Act for 2008 and 2009.

The Claimants oppose, arguing that the controversy concerning the 2008 and 2009 bonuses is not within the exclusive jurisdiction of the NLRB because the payment of the bonuses is also regulated by the Bonus Act. They also argue–undermining their prior argument–that the Bonus Act does not apply to employees who are entitled to a Christmas bonus under a collective-bargaining agreement, making the exemptions from the PRDOL inapplicable as to them. Finally, the Claimants argue that Damas was obligated to pay the 2008 and 2009 bonuses pursuant to final offers made and implemented by Damas in 2007 after an impasse in negotiations (the "2007 Offers").[1]

---

[1] Claimants admit: The 2007 Offers arise from letters dated August 6, 2007 and retroactive to July 24, 2007, sent by Damas to the different bargaining units of the Union with its final offer for payment of Christmas bonuses. [Claimants' Proposed Findings of Fact 7 of the Joint Pretrial Report, Docket No. 1287; Claimants' Exhibit 13, Docket No. 1288-2.] During 2007, Damas implemented the 2007 Offers. [Claimants' Proposed Findings of Fact 7 of the Joint Pretrial Report, Docket No. 1287; Claimants' Exhibit 13, Docket No.1288-2.] The 2007 Offers provided for a Christmas bonus equivalent to 3% to 3.5% of annual gross salary depending on the bargaining unit of the employee. [Claimants' Opposition to Motion for Summary Judgment at p. 5, Docket No. 1317; Claimants' Exhibit 13, Docket No. 1288-2.] Damas paid the 2007 Christmas bonus to the Claimants as per the terms of the 2007 Offers. [Claimants' Statement of Proposed Facts at ¶ 5, Docket No. 1317-1.] There was no impasse in the negotiations in 2008 and 2009. [Claimants' Reply to Uncontested Facts at ¶ 6, Docket No. 1317-2.] Thus, Damas was obligated by the 2007 Offers to pay Christmas bonuses in 2008 and 2009 to the Claimants. [Claimants' Opposition to Motion for Summary Judgment at p. 11, Docket No. 1317; Claimants' Statement of Proposed Facts at ¶ 6, Docket No. 1317-1.]

Damas is right.

"When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."[2] San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245, 79 S. Ct. 773, 780 (1959); accord Chaulk Serv. Inc. v. Mass. Comm'n Against Discrimination, 70 F. 3d 1361, 1364 (1st Cir. 1995) (citing Garmon), cert. denied, 518 U.S. 1005 (1996).[3] This doctrine is known as Garmon preemption or the Garmon rule. The Supreme Court later elaborated on the meaning of "arguably" for purposes of Garmon preemption:

> If the word "arguably" is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in [the suing employee's] favor. That is, a party asserting pre-emption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been "authoritatively rejected" by the courts or the Board. The party must then put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation.

Voilas v. Gen. Motors Corp., 170 F.3d 367, 379 (3rd Cir. 1999) (quoting Int'l Longshoremen's Ass'n v. Davis, 476 U.S. 380, 395, 106 S. Ct. 1904, 1914 (1986)) (citation omitted).

---

[2] Section 7 of the National Labor Relations Act ("NLRA") provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157. Section 8(a)(5) of the NLRA provides that "[i]t shall be an unfair labor practice for an employer . . . to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a) [i.e., section 159(a) of title 29]." 29 U.S.C. § 158(a)(5). Section 9(a) of the NLRA provides that "[r]epresentatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159(a).

[3] See also In Re Pan Am. Hosp. Corp., 2005 W.L. 2445907 (Bankr. S.D. Fla. Feb. 25, 2005) (Denying motion which raised Garmon preemption as basis for protective order from Rule 2004 examination.).

10

An employer commits an unfair labor practice, under section 8(a)(5) of the NLRA, by "refus[ing] to bargain collectively with the representatives of his employees . . . ." 29 U.S.C. § 158(a)(5). Collective bargaining is defined in section 8(d) of the NLRA as the duty to "confer in good faith with respect to wages, hours, and other terms and conditions of employment . . . ." 29 U.S.C. § 158(d). "[T]he duties to bargain and to do so in good faith only attach to the 'mandatory subjects of bargaining,' which are those set forth in section 8(d), i.e., 'wages, hours, and other terms and conditions of employment.'" Voilas, 170 F.3d at 379 (citations omitted); 29 U.S.C. § 158(d). Christmas bonuses–the subject of POCs 95 and 98–may constitute wages under the NLRA and, thus, may be mandatory subjects of bargaining. See NLRB v. Marland One-Way Clutch Co., Inc., 520 F.2d 856, 861 (7th Cir. 1975). The Claimants assert that Damas was required to pay them Christmas bonuses in 2008 and 2009 as per the terms of the 2007 Offers, but did not. "If an employer imposes a unilateral change with respect to a mandatory subject, it thereby violates the statutory duty to bargain . . . ." Voilas, 170 F. 3d at 379. Thus, the court finds that, if this case were before the NLRB, the NLRB could have legally decided it in Claimants' favor; the nonpayment of the Christmas bonuses in 2008 and 2009 is conduct that is arguably subject to section 8 of the NLRA; and Garmon preemption applies to POCs 95 and 98. Actual decisions and orders of the NLRB support these findings.

The NLRB addressed the nonpayment of Christmas bonuses under the Bonus Act in San Juan Bautista, Inc., 356 NLRB No. 102, 190 LRRM 1151, 2011 W.L. 702297 (Feb. 28, 2011) ("SJB" or the "SJB case"). In the SJB case, there was a collective-bargaining agreement in place which provided that "[t]he Hospital recognizes the payment of a Christmas Bonus to each union member of the appropriate units, according to the established dispositions of Law 148,

11

of June 30, 1969, as amended . . . ." SJB, 2011 W.L. 702297 at *1. The SJB Hospital requested an exemption from the PRDOL for the Christmas bonus. SJB, 2011 W.L. 702297 at *2. The PRDOL, in a letter informing the SJB Hospital that it was still determining whether the hospital qualified for an exemption, also "stated that any exemption granted would apply only to employees not covered by the collective-bargaining agreement." Id. Subsequently, the PRDOL informed the union that it had granted the hospital an exemption, but it had specifically informed the hospital "that the exemption would 'only apply to those employees that are not part of the bargaining unit' covered by the collective-bargaining agreement." Id. The SJB hospital, nevertheless, refused to pay the Christmas bonus to its bargaining-unit employees. Id.

As a preliminary matter, the NLRB had to determine the suitability of the dispute in the SJB case to resolution by arbitration because of an arbitration clause in the collective-bargaining agreement. To do so, the NLRB had to determine whether the meaning of the collective-bargaining agreement or the scope of the Bonus Act exemption was at the heart of the dispute. SJB, 2011 W.L. 702297 at *3. It concluded that the scope of the statutory exemption, and not a question of contractual interpretation, was at the heart of the dispute and, thus, the dispute was not suitable for arbitration. Id.

The NLRB then went on to affirm the findings of the administrative law judge "that the Christmas bonus was a term and condition of employment within the meaning of Section 8(d) and thus a mandatory subject of bargaining" and "that the refusal to pay the Christmas bonus was an unlawful contract modification in violation of Section 8(a)(5) and (1)." SJB, 2011 W.L. 702297 at *4. Thus, even if the court could somehow narrow and confine the

controversies between the Claimants and Damas to questions as to the application of the

Bonus Act and the scope of the PRDOL exemption, <u>Garmon</u> preemption would still apply.

<u>Garmon</u> preemption, likewise, applies to the controversies between the Claimants and Damas

as to the implementation of the 2007 Offers; whether there was an impasse in the negotiations

in 2008 and 2009; and the effect, if any, of the 2007 Offers on the 2008 and 2009 bonuses.  <u>See</u>

<u>generally</u> <u>SJB</u>, 356 NLRB No. 102, 2011 W.L. 702297; <u>Saint Luke's Memorial Hospital, Inc.</u>, 2012

W.L. 6018069 at *3  (NLRB Dec. 3, 2012) (Ordering hospital to cease and desist from "[f]ailing

and refusing to bargain collectively with the Union by, unilaterally and contrary to its past

practice, reducing the Christmas bonus paid to the employees in the Units without first

providing notice to the Union and affording it an opportunity to engage in meaningful

bargaining over that matter.").

Although "the <u>Garmon</u> rule admits of some exceptions to the NLRB's primary

jurisdiction," the Claimants did not raise any such exception in their opposition to the motion

for summary judgment.  <u>Chaulk Services</u>, 70 F.3d at 1364.  Nonetheless, the court considered

and rejected *moto proprio* the so-called "local interests" exception.  This exception " hinges, in

the first place, upon the existence of a significant state interest in protecting its citizens from

the challenged conduct. In second place, the controversy which could be presented to the state

court must be different from that which could have been presented to the NLRB."  <u>Chaulk</u>

<u>Services</u>, 70 F.3d at 1366 (citing <u>Sears, Roebuck & Co. v. San Diego County Dist. Council of</u>

<u>Carpenters</u>, 436 U.S. 180, 196–97, 98 S. Ct. 1745, 1757–58 (1978) and <u>Tamburello v.</u>

<u>Comm–Tract Corp.</u>, 67 F.3d 973, 980 (1st Cir.1995)).

As to the first prong, the court assumes *arguendo* that the Commonwealth of Puerto Rico has a significant interest in protecting the rights of its citizens under the Bonus Act. As to the second prong, the Claimants did bring a charge to the NLRB for the 2008 Christmas bonus and then withdrew it to file individual claims in state court. The charge before the NLRB focused on the same controversy as the complaints filed in the Ponce court: the allegation that Damas was "[v]iolating the last economic offer put into effect about July 24, 2007 [i.e., the 2007 Offers] by not complying with the payment of the Christmas Bonus in December 2008." [Damas' Exhibit A, Docket No. 1304-1.] And the dollar amounts of the Christmas bonuses claimed in the complaints filed in the Ponce court and in POCs 95 and 98 are calculated using the 3% to 3.5% formulas in the 2007 Offers or, as a floor, the Christmas bonus required by the Bonus Act.[4] Thus, the controversies presented in the NLRB charge, the Ponce case, and the contested matters on POCs 95 and 98 are identical for purposes of the "local interests" analysis, and the exception does not apply here.

In the joint pretrial report, the Claimants argue that the Christmas bonus provisions of the collective-bargaining agreements which expired in 2006 "survive and remain in effect until a new collective bargaining agreement is agreed [to] and executed by the parties." [Claimants' Proposed Finds of Fact 18 of the Joint Pretrial Report Docket No. 1287.] The Claimants do not raise this argument in their opposition to the motion for summary judgment. Nor do they provide any legal support for it. Nor do they explain the effect of it on POCs 95 and 98. The assertion that the Christmas bonus provisions of the expired collective-bargaining agreements

---

[4] See Claimants' Proposed Findings of Fact 22 of the Joint Pretrial Report, Docket No. 1287; Claimants' Statement of Proposed Facts at ¶¶ 12-14, 16 & 17, Docket No. 1317-1; POCs 95 & 98; Complaint in Civil Case No. JPE2009-0964 attached to POC 95; Complaint in Civil Case No. JPE2009-0268 attached to POC 98.

are still in effect contradicts all of the facts (set out in footnote 1 of this Opinion and Order) which the Claimants admitted to support their main argument that the terms of the 2007 Offers govern as to POCs 95 and 98. Also and as already noted, the dollar amounts of the bonuses claimed in POCs 95 and 98 and the complaints filed in the Ponce court were calculated using the formulas in the 2007 Offers or, as a floor, the Christmas bonus required by the Bonus Act.

The "general rule [is] that a party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits." FDIC v. Panelfab Puerto Rico, Inc., 739 F.2d 26, 30 (1st Cir. 1984) (quoting Gleason v. United States, 458 F.2d 171, 175 (3d Cir.1972)). This last argument of the Claimants runs afoul of Panelfab. But even if it did not, it would not survive Garmon preemption. See SJB, 356 NLRB 102, 2011 W.L. 702297 (The failure to pay a Christmas bonus according to the dispositions of the Bonus Act, which was recognized in a binding collective-bargaining agreement, was found to be an unfair labor practice under section 8(a)(5) and (1) of the NLRA.).

Section 10(b) of the NLRA provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." 29 U.S.C. § 160(b). The deadline to file a charge with the NLRB for the 2008 bonus expired no later than June 2009 and for the 2009 bonus, no later than June 2010. At the time of the filing of the Damas bankruptcy in September 2010 or of the filing of POCs 95 and 98 in January 2011, no charge of unfair labor practices was pending at the NLRB against Damas as to the nonpayment of the 2008 and 2009 Christmas bonuses. Thus, since there is no timely-

15

filed charge pending before the NLRB and the subject matter of POCs 95 and 98 is <u>Garmon</u>

preempted, POCs 95 and 98 are time barred by section 10(b) of the NLRA. 29 U.S.C. 160(b).

**<u>Conclusion</u>**

The court hereby GRANTS the motion filed by Claimants at docket number 802

requesting that the court vacate its order at docket number 743 disallowing POC 98, but only

as to that remedy; GRANTS the motion for summary judgment filed by Damas at docket

number 1304; and, thus, DISALLOWS proofs of claim 95 and 98.

SO ORDERED.

In Ponce, Puerto Rico, this 9th day of July, 2013.

Edward A. Godoy
U.S. Bankruptcy Judge